Commonwealth ex rel. Reno, Appellant, et al. *v.* Pennsylvania Co., etc.

Argued May 21, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Ralph B. Umsted,* Special Deputy Attorney General, with him *Claude T. Reno,* Attorney General, for appellant.

*Harry E. Sprogell, Joseph A. Lamorelle* and *Maurice Bower Saul,* of *Saul, Ewing, Remick & Saul,* for appellee.

*William A. Gray,* for escheator-appellee.

OPINION BY MR. JUSTICE LINN, June 25, 1940:

This proceeding began by petition of Maurice G. Rieger, who alleged his appointment as escheator "of certain unclaimed trust funds in the possession of" respondent, which was described as "engaged in the business of acting as a fiduciary in the capacity of Administrator, Executor, Guardian, Agent, Trustee or otherwise." Petitioner averred that respondent had possessed (1) "uninvested trust funds," composed of (a) "uninvested balances" held as "Administrator, Executor, Guardian or Trustee under wills of decedents," and of (b) "uninvested personal trust funds" as trustee under indentures of trust made by individuals, and (2) also had "uninvested corporate trust funds"; that, on deposits of those funds, respondent received interest of which it credited only part to the "various personal trusts or trust estates . . . but did not distribute all such interest and income to the trusts, trust estates or the beneficiaries entitled thereto" with the result that "the said undistributed interest and income earned on the said trust funds accumulated over a period of many years," and which

respondent "did appropriate and convert . . . to and for its own uses." He averred that "many trusts and trust estates were terminated and closed and the Trustees discharged [and] . . . that at the times the aforesaid trust companies took and appropriated trust funds therefrom, as hereinbefore related, the rightful or lawful owners thereof could not be ascertained or determined, and that the rightful or lawful owners thereof cannot now be ascertained or determined."

Petitioner asked the court to "hear and determine whether or not the aforementioned funds have escheated, and to issue a summons or citation directed to [respondent] to show cause, if any it has, why it should not file a true and accurate account of all and singular the funds or property herein alleged to have escheated as aforesaid."

The respondent filed an answer setting forth a number of objections challenging petitioner's right to discovery and account. No hearing had been held on the issues raised by the answer when the action was taken which resulted in this appeal.

In July, 1939, the Secretary of Revenue revoked Reiger's appointment as escheator. In September, the Attorney General appeared on behalf of the Commonwealth and moved to dismiss the proceeding on the ground that the escheator's commission had been revoked. The Act of May 28, 1915, P. L. 616, amended July 7, 1919, P. L. 731, 12 PS section 145, authorizes the Commonwealth to intervene "and to appear, plead, prosecute, defend, or appeal, as other parties litigant." The learned court below heard argument and dismissed the Attorney General's motion. The Commonwealth appeals from that action.

The learned court below held that the revocation of the escheator's commission was unauthorized. We shall not stop to consider that point. The decisive question is whether an escheator's petition is authorized by statute, or whether the legislature has provided other pro-

cedure to reach the property, alleged to be escheatable, in the hands of respondent.

It was the petitioner's duty clearly to aver a case within some act or acts of assembly. As we understand the petition, the property in question is the accumulation of interest paid to respondent on various deposits of trust funds, but which, because respondent "did not distribute all such interest and income to the trusts, trust estates, or the beneficiaries entitled thereto," it appropriated to its own use; in other words, it received interest on trust deposits and kept part of it. This property is alleged to have been received and misappropriated by respondent in a number of capacities: as administrator, as executor, as agent, and as "trustee or otherwise." Petitioner does not state how many accounts there were in all or in any of the capacities named; if we may judge from the total sum alleged to have been misappropriated ($829,028.20) there must have been a large number of trust accounts and, therefore, if the averments are true, there must be many creditors or claimants on the funds.

A brief reference to the progress of the legislation on the subject will aid in showing how this appeal must be disposed of and why. The feudal origin of escheat may be laid aside and an escheat may be defined as the Commonwealth's seizure of property which has been abandoned or of which the owner has died intestate, leaving no one to take from him. Our statute law on the subject began early.[1] The Intestate Act still contains an escheat provision (section 24)[2] based on the Act of September 29, 1787, 2 Sm. L. 425, and procedure

---

[1] November 27, 1700, 2 Stat. at Large 31. See also 2 Stat. at Large 449, 450; 2 Stat. at Large 199, 205.

[2] "In default of all such known heirs or kindred or surviving spouse, competent to take as aforesaid, the real and personal estate of such intestate . . . shall be . . . paid into the State Treasury for the use of the Commonwealth." Act of 1917, P. L. 429, section 24, as amended, 20 PS section 137.

for its application is familiar: see *Com. v. Sweeney,* 283 Pa. 520, 129 A. 577; *Miles v. Metzger,* 316 Pa. 211, 183 A. 285. The escheat of trust estates was not provided for by the early legislation and apparently the omission was not cured until the Act of April 17, 1869, P. L. 71, was approved. As it is the predecessor of the present legislation for the escheat of trusts, bailments and deposits, we must refer to its provisions.[3] Section 1 provided for the escheat of "the beneficial interest" of a trust estate; section 2, for the escheat of trust property of beneficiaries "unknown for the space of seven years"; section 3 provided that "Whenever any trustee, bailee or other depositary is or shall be seized or possessed of property, real, personal or mixed, as a fiduciary agent, which property is or shall be without a rightful owner, the same shall escheat . . . ."

The next important Act[4] was approved May 2, 1889, P. L. 66, which, in *Alton's Estate,* 220 Pa. 258, 269, 69

---

[3] It was considered in *Com. v. Naile,* 88 Pa. 429 (1879), and in *Linton's Estate,* 198 Pa. 438, 48 A. 298, escheat cases involving trust property. In *Com. v. Naile* the court said at p. 434: "3. Another objection to the claim of the Commonwealth has been made on the ground that the interest of Cecilia Erben was held in trust. Without the Act of the 17th of April 1869, it is probable that this objection to a recovery would be fatal. The 1st section of that act made this provision: . . . Before the passage of the Act of Parliament which modified it, the rule of the English common law appears to have been, that where a *cestui que trust* died without heirs, the trust did not escheat to the crown, so that the lands could be recovered in a court of equity by the King; but the trustee should hold them for his own benefit: *Burgess v. Wheate,* 1 Black. Rep. 123 [96 Eng. Reprint 67]. If no effect can be given to the Act of the 17th of April 1869, such would possibly be the legal destination of this fund." It was held that on the expiration of the trust the trust property would go to the Commonwealth.

[4] We need not refer particularly to the Act of April 17, 1872, P. L. 62, which, in *Com. v. Dollar Savings Bank,* 259 Pa. 138, 144, 102 A. 569, the court said "is not an escheat act" but rather an act conserving inactive bank deposits for ultimately escheating such as remain unclaimed.

518

A. 902 (1908) was described as establishing "a complete system of escheats and [repealing] all acts inconsistent therewith." Section 1 dealt with property left by an intestate; section 2, with property deposited in court or with a depository or receiver or other officer of a court; section 3, with trust property. In such cases the Auditor General was authorized to appoint an escheator. In this Act, as in the prior legislation, the legislature dealt with the unknown owner's property as a separate unit: (a) as the property of an intestate; (b) as the deposited "money, estate, or effects" of "unknown" persons; (c) as trust property of an unknown beneficiary. Subsequent sections conferred jurisdiction and supplied procedure. Provision was made for notice to parties interested and for an adjudication of the account. Section 9 provided for jury trial of disputed "facts touching said escheat." Section 10 required the court to set forth certain facts in the adjudication such as "the full name of the intestate, if any there be, or of the person who was last seized or possessed of the property in question." Provision was made for the sale of real estate. Time was allowed for parties, claiming to be interested, and without notice, to traverse the adjudication and, in special contingencies, to have a trial. These provisions are mentioned for the purpose of showing that property left by an intestate or abandoned by an owner was made the subject of a single proceeding. There is nothing to indicate that claimants to properties in two or more estates alleged to be escheatable could be required to become joint parties to a single suit. From the phraseology used, it could never have been contemplated that the issues arising in a number of escheat proceedings concerning property of unrelated owners should be tried in a single suit. We have no doubt that it was the legal impossibility of joining different escheat proceedings in one petition, considered with the desirability, in circumstances where there is a single debtor, of trying a number of escheatable claims

in a single suit, that led to the change in later legislation which, departing from the requirement of separate trials in the case of each escheated estate, specifically authorized the Attorney General to proceed by bill against one debtor obligated to different creditors.

This change came about in the Act[5] of June 7, 1915, P. L. 878. The statute enlarged the provisions of the Acts of 1869 and of 1889. Section 7 provides for enforcement "by action in the nature of a bill in equity, by the Commonwealth, under the direction of the Attorney General, against the debtor and its creditors. Any number of items may be joined in one action against one debtor, though owed to different creditors." In that phraseology lies the authority for trying a number of escheats in a single proceeding. It appears to be the first departure from the former requirement that each escheatable estate be dealt with separately. This 7th section was amended by the Act of April 21, 1921, P. L. 223, section 5, 27 PS section 282, providing: "Such escheat shall, at the suggestion of the Auditor General, be determined and enforced by an action in the nature of a bill in equity, filed by and in the name of the Attorney General, against the depositary, fiduciary, or debtor, and all of his or its depositors, beneficiaries, or creditors for whom he or it holds unclaimed moneys es-

---

[5] The title was: "AN ACT Providing for the escheat of deposits of money or property of another received for storage or safe-keeping; the dividends, profits, debts, and interest on debts of corporations, companies, banks, trust companies, insurance companies, limited partnerships, and partnership associations, organized under the laws of this Commonwealth, except mutual saving-fund society not having a capital stock represented by shares, and except also building and loan associations, and property held for the benefit of another by the same, and the profits, accretions, and interest on such property, as well as interest thereon accrued, or which should have accrued, between the fixing of the amount of such property by the award of any court and the actual distribution thereof." This Act was considered in *Germantown Trust Co. v. Powell*, 265 Pa. 71, 108 A. 441.

cheatable under the provisions of this act, in the appropriate court. . . . Any such escheat proceedings may be prosecuted whether the deposits, dividends, moneys, funds, or other property or estate sought to be escheated, shall have been reported to the Auditor General in conformity with the provisions of this act or have not been so reported. Any number of items may be joined in one action against one debtor, though owed to different creditors."[6] The language is mandatory; the escheat shall be determined by an action in the nature of a bill in equity brought by the Attorney General. This innovation is of controlling significance in disposing of this appeal. The Fiscal Code of April 9, 1929, P. L. 343, section 1308, P. L. 404, 72 PS section 1308, transferred escheats from the Auditor General's to the Revenue Department but retained the requirement of suit by the Attorney General. Section 1302, defining the powers and duties of escheators does not provide for a single proceeding to escheat several funds. Section 1309 gives to the Attorney General the option to exercise any of the powers given to escheators, but does not permit escheators to exercise the functions of the Attorney General.

The only legislation, authorizing a single escheat proceeding against respondent, alleged to be under obligation, resulting from breaches of trusts, to a number of creditors alleged to be dead or unknown, requires suit by the Attorney General and not by an escheator. This construction of the statute was indicated by Chief Justice SCHAFFER in *Rosenfeld's Appeal,* 337 Pa. 183. The Act of March 21, 1806, 4 Sm. L. 326, 46 PS section 156, provides in section 13 "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of such acts shall be strictly pur-

---

[6] By a later provision the Attorney General is authorized also to file a bill of discovery.

sued. . . ." See *Derry Twp. S. Dist. v. Barnett Coal Co.*, 332 Pa. 174, 177, 2 A. 2d. 758. That provision is applicable to the construction of the provisions of this escheat act which, for the first time, authorized what may, without disrespect, be described as an omnibus escheat proceeding against a single respondent.

The order is reversed and the petition of the escheator is dismissed.