## H. J. Heinz Company v. City of Pittsburgh

Before McNaugher, Nixon and Weiss, JJ.

*James H. Beal, Frank W. Ittel, Carl E. Glock, Jr.,* and *Reed, Smith, Shaw & McClay,* for plaintiff.

*Anne X. Alpern,* city solicitor, and *J. Frank McKenna, Jr.,* first assistant city solicitor, for defendant.

WEISS, J., April 8, 1953.—This action is a complaint in equity seeking to enjoin defendant, City of Pittsburgh, from collecting penalty and interest on $1,736.55, the agreed amount of the H. J. Heinz Company's mercantile tax for the year 1950.

The facts in this case are not in dispute; the history is somewhat lengthy, but a summary of the cogent facts will suffice.

Plaintiff manufactures, produces and prepares foodstuffs for sale. It paid mercantile license taxes in each year based upon what it considered to be its taxable sales. The question of which of plaintiff's products were manufactured was litigated in connection with the tax for 1948. This litigation was settled by an agreement of the parties resulting in a reduction of the assessment for 1948 from $6,124.68 to $3,739.52 on July 13, 1950. The city claimed penalty and interest on this amount from March 31, 1948, and the question was appealed to the Superior Court which affirmed the decision of this court that penalty and interest could not be collected. 170 Pa. Superior Ct. 435. The Supreme Court refused an allocatur. 170 Pa. Supreme Ct. xxvi.

For the year 1950 the City of Pittsburgh assessed additional mercantile tax against the company in the sum of $3,387.23. By agreement between the parties entered into in July 1950 it was agreed that the sum of $1,736.55 was due and owing by the company to the city, and that the company's liability for the balance of $1,650.68 would be determined by the court. It was ultimately decided by the Superior Court under date of March 18, 1952, that the company was not liable for the $1,650.68.

On July 21, 1952, the company tendered its check in the sum of $1,736.55 to the Treasurer of the City of Pittsburgh, but the treasurer refused to accept the same on the ground that it did not include penalty and

interest from March 15, 1950, to July 21, 1952, the date of the tender.

The company still asserts that it is not liable for penalty and interest on the sum of $1,736.55, which is admitted to be the correct amount of tax due for 1950.

The decision in the case must be in favor of plaintiff under the decision in H. J. Heinz Company v. School District of Pittsburgh, 170 Pa. Superior Ct. 441 (1952), *unless* section 12 of the City Mercantile Tax is valid and is applicable to the present case. Under that decision the court set forth the rule which is applicable to this proceeding. The court held:

". . . The ordinance of the City of Pittsburgh under which the Mercantile License Tax was imposed does not contain a provision requiring or even permitting the City to make refunds of taxes erroneously or inadvertently paid. If the appellee in this case had voluntarily paid the whole amount demanded by the City it could not recover back the amount of the penalty and interest included in the payment, at the termination of this case if not liable for these penalties. In order to maintain an action to recover penalties paid on taxes for which there was no liability the overpayment must have been exacted by compulsion. If the payment was a voluntary one, it may not be recovered unless a statute so provides."

Under the stipulated facts in the present case, there was a provision which authorized refunds to be made to a taxpayer if an overpayment was ascertained. This section of the ordinance was approved on December 24, 1949, and was retroactive to January 1, 1948. It provided inter alia:

"REFUNDS—The City Treasurer is hereby authorized to accept payment under protest of the amount of mercantile tax claimed by the City in any case where

the taxpayer disputes the validity or amount of the City's claim for tax. If it is thereafter judicially determined by a court of competent jurisdiction that the City has been overpaid, the amount of the overpayment shall be refunded to the taxpayer. The provisions of this section shall be applicable to cases in which the facts are similar to those in a case litigated in a court of competent jurisdiction."

Therefore, the first issue is whether the above section of the city ordinance is a valid enactment and is applicable to this instant proceeding.

This court is of the opinion that section 12 of the city mercantile tax was properly enacted and was in full force and effect at the time the original assessment was made by the City of Pittsburgh.

It is a general rule that when an ordinance is enacted pursuant to a statute of the legislature, the ordinance must cover only those subjects which were expressly provided for in the enabling statute: Goldstein v. Pittsburgh School District, 372 Pa. 188 (1952). As stated in Wentz v. Philadelphia et al., 301 Pa. 261, at 271:

" 'The Scope of this grant of power of course necessarily includes all appropriate means for the carrying out of the purposes specified, but does not go beyond that. . . .

" 'Nothing is better settled than that a municipal corporation does not possess and cannot exercise any other than the following: (1) Those granted in express words; (2) Those necessarily or fairly implied in or incident to the powers expressly granted; (3) Those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable.' "

Under the enabling statute, no mention is made concerning refunds or the right to make refunds. The

provision in that statute relating to penalties reads:

"Any such political subdivision shall have power to prescribe and enforce reasonable penalties for the nonpayment, within the time fixed for their payment, of taxes imposed under authority of this Act and for the violations of the provisions of ordinances or resolutions passed under authority of this Act." Act of June 25, 1947, P. L. 1145; 53 PS §2015.7.

There is no express provision nor is any mention made of a refund. However, it appears that the authority to provide for refunds is implied in the statute. No enabling statute can set forth in detail every provision which may be enacted by the taxing authority. This section of the enabling statute gives the city the "power to prescribe and enforce reasonable penalties". If the power to prescribe penalties is given, it follows that the right to make refunds of these penalties is a necessary concomitant.

The general rule that has been followed in Pennsylvania is that an ordinance must give the right to a refund before one can be claimed. The legislature undoubtedly knew of this rule when it drafted the enabling act. If they had not wanted to permit the city to enact such a common and equitable provision in their ordinance, they surely would have expressed this, since failure to provide for a refund would mean that a taxpayer could never pay his tax and later claim a refund. It would also mean that if an assessment were contested, the taxpayer would not dare pay any part of the tax for fear of losing it, even if the appeal were entirely successful. This would deprive the taxing authorities of a large amount of revenue rightly due it.

Also, under the penalty provisions above recited, the clause following the initial authority to levy reasonable penalties, reads:

". . . and for the violations of the provisions of ordinances or resolutions passed under authority of this Act."

It seems clear that a refund is certainly a category of violation. The authority to designate who should collect the taxes or when the interest should begin to run would be a permissible enactment under this statute. Therefore, a provision that the tax be paid and a refund made in case of an adverse decision by the court would be stretching this power no further.

Therefore, under this reasoning, we are in accord that section 12 of the city ordinance authorizing a refund was a valid enactment made pursuant to legislative authority.

Plaintiff further argues that, if the ordinance authorizing a refund is valid and was retroactive to January 1, 1948, then the case of 170 Pa. Superior Ct. 441 controls, since the ordinance was also in effect at the time that case was heard. Although this may be correct, yet the refund ordinance was not passed until December 24, 1949, and so was not in effect in 1948 when the assessment in that case was made. In 1948 plaintiff could not have known of the refund section and so he operated under the theory that there was no such provision. In the instant case the facts are different. Here plaintiff knew of the statute when the original assessment was made in 1950. He knew of it at all times during the suit and his failure to abide by it cannot be excused on the basis of the decision in 170 Pa. Superior Ct. 441. This is further supported by the fact that the Superior Court stated there was no statute authorizing a refund present in that case. In this proceeding there definitely was such a statute. Therefore, this argument by plaintiff is without merit.

We now come to the crux of the dispute. The issue is whether a taxpayer who, in good faith, appeals a

tax assessment and obtains a substantial reduction, is liable for penalty and interest on the money found due when there was a provision in the taxing ordinance authorizing the treasurer to accept payments under protest and refund any amounts found to be excessive.

There are numerous cases in Pennsylvania which hold that, in the absence of any statute authorizing a refund, taxes paid voluntarily may not be recovered even in the event of successful litigation: Wilson et ux. v. Philadelphia School District et al., 328 Pa. 225, and Investor's Realty Co. v. Harrisburg, 281 Pa. 200 (1924). So, too, the rule has been established that, where a taxpayer contests an assessment, the taxing authority may not impose penalty and interest on the correct amount of assessment, provided again that there was no provision made for a refund: H. J. Heinz Co. v. School District of Pittsburgh, 170 Pa. Superior Ct. 441 (1952). None of the cases which fall within the above categories can serve as a basis for the decision in our present case since here we do have a provision authorizing a refund.

Plaintiff places great weight on the argument that, although the ordinance authorizes a refund, yet it does not give the taxpayer the right to a refund and so this ordinance providing for a refund was really no remedy at all. There does not appear to be any merit to this contention.

The city ordinance provides that the city treasurer is authorized to make refunds if it is judicially determined that an overpayment was made. It seems clear from this language that a right to a refund was intended. To say that a refund is merely authorized but not compelled is merely "verbal gymnastics". If it were so, then the city treasurer would be entitled to keep all moneys paid him under protest under the provisions of the ordinance. This result is absurd. To

make a distinction based on the word "authorized" is too tenuous.

The present case differs from those where taxes were voluntarily paid and later a statute authorizing a refund was enacted: Arrott v. Allegheny County, 328 Pa. 293 (1937), and In re Siedl's Appeal, 143 Pa. Superior Ct. 539 (1941). Under those cases, authority to make a refund did not give the taxpayer a right to sue for the refund, since he had voluntarily paid the tax without protest and then sought a remedy not contemplated when the tax was paid. Here, however, this section only applies to a case where payment is made under protest and there is a dispute as to the amount or validity of the tax. In such a situation, it is apparent that the payment is made only to stop the addition of penalty and interest.

To say that the treasurer had the power to accept payment of the whole tax in advance of the final determination of the correct amount and then refuse to return the overpayment when the correct amount was determined would be to state an absurdity and an unrealistic view.

Counsel for plaintiff cites Phipps et al., Trustees, v. Kirk, Treasurer, 333 Pa. 478 (1939), as authority that no penalty and interest are due when a substantial reduction is obtained even when there is a statute authorizing a refund. However, as the court stated, the one issue was whether penalty and interest can be extracted "where the statute allowing the appeal contains no provision for a refund of any excess in case a reduction is had". As in so many tax cases, this case is distinguishable since there no refund was authorized.

It can serve no useful purpose to cite all the tax cases concerning refunds and to attempt to distinguish, clarify or correlate them. Each case is peculiar on its own facts and on its taxing statute.

The issue then resolves itself into a twofold query. First, is the city entitled to interest on the money which was found to be owing by plaintiff; and second, is the city entitled to a penalty on this money? It is the conclusion of this court that plaintiff owes the "interest due" but not the penalty.

The question of interest resolves itself into who should have had the use of the amount of the tax actually due during the period of litigation. There are arguments to sustain both sides. Plaintiffs claim that, since they could not know how much they would owe, they should not have had to pay any money until the court decided the proper amount due. They also argue that, if they paid the full amount originally assessed, then the city would have had the use not only of the money properly due but also of the money not due them.

On the other hand, the city claims that they were actually due the correct amount of the tax at all times and that they were entitled to the use of that money at all times. Further, plaintiffs could have protected themselves by paying the entire amount of the tax and then, when the correct amount was determined, sought a refund.

Both these arguments have merit. One of the two must suffer some loss. After carefully weighing the equities, it appears that the greater equities lie with the city.

The ordinance of the city is clear. When there is a dispute as to the validity or the amount of the assessment, then the treasurer is authorized to accept payments under protest and issue refunds in case there is a reduction in the tax. The ordinance also provided for the assessing of interest from the due date of the tax. At all times plaintiff was aware of these provisions, and his failure to follow them necessarily results

in any penalty which is provided for. Plaintiff knew the consequences of his failure to pay under the ordinance and he must suffer any loss thereby. In line with this reasoning, the further argument is presented that, by not imposing interest, a taxpayer could grasp at the delay incident to litigation as a means of postponing his day or contribution to the public burden and thereby depriving the city of much needed funds. See Commonwealth ex rel. Reno et al. v. Pennsylvania Co., etc., 339 Pa. 513 (1940).

We recognize that the ideal situation would be a provision in the refund statute providing that all refunds be made with interest so that when one paid any amount in excess of the correct amount as may subsequently be determined, then they would recover interest on the use of their money for the period it was held by the treasurer. However, this is not a problem for the courts but one for the legislature and city councils. Plaintiff's remedy lies there. See Commonwealth v. Perkins, 342 Pa. 529.

As to whether a penalty can be exacted, we are in complete agreement that none can. By the very nature and definition of a penalty, plaintiff does not fall within its intended meaning. The reason that a penalty is imposed is to compel taxpayers to pay their taxes promptly and to punish taxpayers for frauds, evasions, and neglect of duty: 61 C. J. 1484, §2109. Also see Cooley, Taxation, sec. 1273.

A penalty is exacted because of a refusal or a negligent or willful failure to pay the tax on time. A penalty is punishment for nonpayment. Under the facts in our present case, plaintiff did not refuse or neglect to pay its tax. They diligently attacked the assessment and were successful. There appears to be no reason why they should be penalized for what was a correct view of the situation.

As the court, in Ferguson v. Pittsburgh, 159 Pa. 435 (1894), said:

"We think this indiscriminate imposition of the penalty contended for, upon the wilfully delinquent and also upon the one who honestly exercises his lawful right of appeal from the unconscionable assessment, calls for amendment." See also 159 Pa. 583 (1894).

To further substantiate this point, it appears that the imposition of penalties on the amount found to be due would nullify any gain made in appealing an assessment. With the time consumed in litigation in our present court system, ranging from six months to three years, a penalty of one percent per month, as provided in this case, would mount up so as to nullify any savings made by the taxpayer. In Phipps et al., Trustees, v. Kirk, Treasurer, 333 Pa. 478 (1939), the court said:

"Any other conclusion would be an absurdity and would make an appeal by such taxpayers a vain and useless thing."

In Integrity Trust Company v. Fell et al., 17 D. & C. 97 (1932), the court said:

"If the property owner tenders promptly upon the determination of the appeal the amount properly owing by him, the penalty for nonpayment of the tax at the time it was due cannot be exacted by the city."

In view of the Pennsylvania authority on the subject and with a reasonable view in mind of the purpose of exacting a penalty, it is the conclusion of this court that plaintiff is not liable for a penalty on the amount of the tax which was due.

Therefore, the decision in this case is that plaintiff is liable for the amount of the tax as stipulated, plus interest from the due date of the tax until the time tender was made but that no penalty shall be assessed plaintiff for that period of time.

*Order of Court*

And now, to wit, April 8, 1953, it is hereby ordered, adjudged and decreed that plaintiff, H. J. Heinz Company, is liable to the City of Pittsburgh for interest from March 15, 1950, to July 21, 1952, on the amount of money owed by plaintiff to the city by reason of the city mercantile tax.

It is further ordered that defendant, City of Pittsburgh, be enjoined from collecting any penalty which may have been assessed by reason of this tax.