## Kervick's Escheat

*Martin Feldman*, for petitioner.

HERMAN, J., June 12, 1961.—The Commonwealth of Pennsylvania, by Martin Feldman, escheator, asks us to declare that certain property described in his petition for escheat be escheated to the Commonwealth of Pennsylvania. This we cannot do.

The property of which escheat is sought consists of debts of some 21 corporations incorporated or doing business, or both, in the State of New Jersey, and none

of which are Pennsylvania corporations. The debts, however, are owing to persons whose last known address was in Pennsylvania. All of these debts have been turned over to, and are presently held by, the State Treasurer of New Jersey under a custodial statute which provides, in substance, that, when corporations organized under the laws of New Jersey have custody or possession of any moneys payable to any person as a dividend, interest or wages; or when corporations organized under the laws of any other State and authorized to do business in New Jersey, have custody or possession of wages earned within New Jersey; or have custody or possession of any moneys otherwise having a situs in New Jersey, and the owners, beneficial owners, or persons entitled have been unknown, or their whereabouts unknown, or the property has been unclaimed for five successive years, then these moneys shall be turned over to the State Treasurer to be held by him for the benefit of the respective creditors, and that then, if, after two years, the owners fail to claim them, they shall be escheated to New Jersey.[1] The only connection that Pennsylvania has with these debts is that the last known address of the creditors was in Pennsylvania.[2]

The action begun here in Pennsylvania to escheat these debts purports to be a final taking in escheat, as distinguished from custodial taking, and it is well settled that, before escheat will be decreed, it is " 'the duty of a petitioner for escheat "clearly to aver a case within some act or acts of assembly";' Escheat of $92,800, 361 Pa. 51, 57 (1949); Commonwealth ex rel. Reno, et al. v. Pennsylvania Co., etc., 339 Pa. 513,

---

[1] N.J.S.A. 2A:37-29-34.

[2] Apparently two of the bases for New Jersey's action concerning these debts, however, is that these parties are now, and for some years have been, unknown or their whereabouts are unknown.

516 (1940)": Commonwealth by Gottlieb, Escheator v. Western Union Telegraph Co., 73 Dauph. 160, 163-64 (1958), affirmed 400 Pa. 337 (1960).

In the instant case, the escheator avers that the funds in question are escheatable to the Commonwealth under the Act of April 17, 1869, P. L. 71, sec. 3, 27 PS §332, which provides:

"Whenever any trustee, bailee or other depositary is or shall be seized or possessed of property, real, personal or mixed, as a fiduciary agent, which property is or shall be without a rightful owner, the same shall escheat to the commonwealth, subject to all legal demands on the same."

And the Act of May 2, 1889, P. L. 66, sec. 3, as amended, 27 PS §333, which provides, in part:

"(d) Whensoever any real or personal property within or subject to the control of this Commonwealth is or shall be without a rightful or lawful owner, such real or personal property, together with the rents, profits, accretions and interest thereof or thereon, shall escheat to the Commonwealth, subject to all legal demands on the same."

But, of course, these acts refer to "trustees, bailees, or other depositaries" *in Pennsylvania or subject to Pennsylvania jurisdiction* and not to trustees, bailees or other depositaries in the other 49 States, or, they refer, as they specifically say, to "real or personal property *within or subject to the control of* this Commonwealth." If it were otherwise, the acts would certainly violate the Fourteenth Amendment of the Constitution of the United States. The general rule is that no State by its laws can directly affect, bind or operate upon property or persons beyond its territorial jurisdiction, and a statute purporting to have such operation would be invalid: 50 Am. Jur., Statutes, §485 (1944), and cases there cited.

428

In the present case, neither the corporations from which the funds are derived, nor the person now holding them, i.e., the Treasurer of the State of New Jersey, nor the debt itself, is in Pennsylvania nor subject to its jurisdiction.

The escheator argues that he is not asking for a judgment against the State of New Jersey, but only that we declare the moneys in question escheated to the Commonwealth of Pennsylvania. But we must point out that, entirely apart from the question of due process, we find no authority in the Pennsylvania statutes for any such declaration here.

"A legislative provision for escheat is a valid exercise of the police power of the State" (Philadelphia Electric Company Case, 352 Pa. 457, 463 (1945) ), but, of course, police power was never intended to, nor could it extend beyond, the State's borders, and while it is elementary that the Fourteenth Amendment to the United States Constitution does not deprive the States of their police power over subjects within their jurisdiction (Cunnius v. Reading School Dist., 198 U.S. 458, 469 (1904) ), it is just as elementary that the police power must be exercised in subordination to the provisions of the Constitution. We may go so far as to say that the State has jurisdiction over intangibles within its borders, and has the power to subject them to escheat even as against possible nonresident owners. See Security Savings Bank v. People of State of California, 263 U. S. 282 (1923) ; Philadelphia Electric Company Case, supra. But it has never been held that a State has jurisdiction to declare an escheat of property situated outside of the jurisdiction and held by persons domiciled in another State. We can find no statute in Pennsylvana declaring such escheat, but if one such existed, it would certainly be unconstitutional.

Historically, escheat was the taking by the sover-

eign of ownerless property floating around within the State, but it was never intended that one sovereign should reach into the territory of another to take such property.

In Standard Oil Co. v. New Jersey, 341 U. S. 428 (1950), the State of New Jersey was permitted to escheat dividends and stock, the owners of which resided outside of the State, but the corporation holding the dividends and stock was a creature of New Jersey and had its registered office there. The United States Supreme Court said, at pages 435-36:

"As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property *within its reach*, belonging to unknown persons. Such property thus escapes seizure by would-be possessors and is used for the general good rather than for the chance enrichment of particular individuals or organizations . . ."

And, at page 438:

"Appellant is a corporation of New Jersey, amenable to process through its designated agent at its registered office . . . This gave New Jersey power to seize the *res* here involved, to wit, the 'debts or demands due to the escheated estate . . .' "

The Supreme Court indicated that the power to seize the debt is by jurisdiction over the debtor.

In Security Bank v. People of State of California, 263 U. S. 282 (1923), the court said, at pages 285, 287-88:

"The unclaimed deposits are debts due by a California corporation with its place of business there . . . The debts arose out of contracts made and to be performed there. . . . Thus the deposits are clearly intangible property within the State. Over this intangible

property the State has the same dominion that it has over tangible property.

". . . These [escheat proceedings] are generally considered proceedings strictly *in rem*. But whether the proceedings should be described as being *in rem* or as being *quasi in rem* is not of legal significance in this connection. In either case the essentials of jurisdiction over the deposits are that there be seizure of the *res* at the commencement of the suit; and reasonable notice and opportunity to be heard . . .

"Seizure of the deposit is effected by the personal service made upon the bank . . . Thereby the *res* is subjected to the jurisdiction of the court . . ."

In the instant case, however, Pennsylvania has no control over the debtors, the corporations originally holding the debts, and certainly none over the Treasurer of the State of New Jersey. The *res* is not and never has been in Pennsylvania nor in any way subject to its control. It seems clear to us that, under the facts of this case, Pennsylvania would have no jurisdiction to declare an escheat even though a statute provided for such escheat, and we find no such statute.

Petitioner cites two cases which he avers lend some authority to his claim that the property here in question should escheat to Pennsylvania, but we believe those cases, as well as Western Union Telegraph Co. case, not cited by counsel but arising in this court and having some similar problems, are clearly distinguishable.

The one case cited by petitioner, In re Escheat of Moneys in Custody of United States Treasury, 322 Pa. 481 (1936), affirmed in the United States Supreme Court under the name of United States v. Klein, 303 U. S. 276 (1937), concerned funds held by a Federal court in the eastern district of Pennsylvania. In that case, Klein, the escheator, filed a petition in escheat

in the Court of Common Pleas in Philadelphia County, averring that, in a certain equity proceeding in the District Court of the United States for the Eastern District of Pennsylvania, sums of money were found due to bondholders; that some of the bondholders had not been located; that the Federal court had directed that these funds be paid into its registry and that, after five years, the unclaimed moneys were then deposited to the credit of the Treasury of the United States.

It was the escheator's position in the Philadelphia common pleas court that these unclaimed moneys escheated to Pennsylvania and he further averred that when he attempted to file a petition for escheat in the Federal district court, he was turned down for lack of jurisdiction; and that then, in this present action, he asked the court of common pleas for a "decree in escheat," stating that this was necessary to qualify its escheator to present a claim in the United States district court. The United States attorney opposed, and the Court of Common Pleas of Philadelphia County dismissed the escheator's petition. The Supreme Court of Pennsylvania, however, reversed the lower court, pointing out that there was an amendment to the Act of 1889, which specifically provided for escheat of funds in the custody of, or under the control of, any United States court in Pennsylvania, or in the custody of any depositary, clerk, or other officer of such court.

The Pennsylvania Supreme Court there said that (p. 485), "As the Commonwealth merely asks for a declaration of escheat and does not desire an order of payment directed to any federal agency there would seem to be no objection to considering the proceedings as in personam," and indicated that the court of common pleas should have proceeded with the case and made such determination as the evidence might re-

quire, and if an escheat were found, to have restricted the enforcement thereof, since it must be conceded that a State cannot take possession of property in the custody of the Federal government.

It must be remembered, however, that, unlike the instant case, in the Klein case the money was first in the Federal court registry in Pennsylvaina when Pennsylvania instituted its escheat proceedings. The *res* was, therefore, here, and even when the transfer was made from the registry to the account of the United States Treasury, there was merely a bookkeeping item which had no legal effect of removing the *res* from Pennsylvania, and it must further be pointed out that, unlike the instant case where there is no escheat act providing for the escheat of the funds here sought, in the Klein case there was specific statutory authority providing for this escheat.

It might also be noted that, unlike the instant case, where all of the corporations from which the funds originally came were corporations foreign to the Commonwealth of Pennsylvania, the corporation in the Klein case, whose bondholders were entitled to the money, was the Pennsylvania Canal Company which was a domestic corporation chartered by a specific act of assembly in Pennsylvania.

In Connecticut Ins. Co. v. Moore, 333 U. S. 541 (1947), the United States Supreme Court upheld the New York Abandoned Property Law as it was applied to certain policies of insurance issued for delivery in New York on the lives of residents of New York, and payable to the beneficiaries in New York, but written by companies in States other than New York. Although the companies were incorporated in other States, apparently the escheatable property was in New York, for the court said, at page 548, that the appellee, the New York State statutory officer, need only show "as

he does . . . that there may be abandoned moneys, over which New York has power, in the hands of appellants [the insurance companies]. The question is whether the State of New York has sufficient contacts with the transactions here in question to justify the exertion of the power to seize abandoned moneys due to its residents."

The New York Court of Appeals said, and it was quoted with approval by the United States Supreme Court, at page 551: " 'For the core of the debtor obligations of the plaintiff companies was created through acts done in this State under the protection of its laws, and the ties thereby established between the companies and the State were without more sufficient to validate the jurisdiction here asserted by the Legislature.' "

In both the Klein and the Moore cases, there was a specific *res* over which the State had some control. Here, in the instant case, the debt, the property sought to be escheated, is in New Jersey where the debtor is domiciled and not in Pennsylvania where the creditors seven years ago perhaps lived. It is the power of control over the debtor that is the foundation of jurisdiction over debts.[3]

In the Western Union Telegraph Co. case, supra, the Commonwealth of Pennsylvaina successfully escheated funds held in Pennsylvaina banks by a New York corporation, where the funds, the *res* involved, originated in Pennsylvania by virtue of an attempt to transmit them by telegraph therefrom, but which funds were never delivered nor returned to the senders.

President Judge Neely, in a well-considered opinion, said, at page 168:

". . . when ownerless property held by a foreign

---

[3] Carpenter. Jurisdiction Over Debts for the Purpose of Administration, Garnishment, and Taxation. 31 Harv. L. Rev. 905 (1918).

corporation is *within the dominion of this State*, i.e., the res is subject to the State's control, Pennsylvania has the right to escheat the money, even as against the claims of the corporation's State of domicile, where the State has had extensive contact with the transactions by which the res was created."

Judge Neely further pointed out, at page 166:

"We think the important factor in the instant case is not situs but rather the dominion of the res. The property here to be escheated—respondent's deposits in Pennsylvania banks—'is a part of the mass of property *within the state whose transfer and devolution is is subject to state control*': Standard Oil Co. v. New Jersey, 341 U. S., supra, [428] at 438, 441."

For the reasons herein set forth, we make the following

*Order*

And now, June 12, 1961, the prayer of the petition that it be declared that the property therein described be escheated to the Commonwealth of Pennsylvania is herewith denied.