Murdoch v. Pennsylvania Railroad Co.

574

Robert A. Enders, for plaintiff.

Nauman, Smith, Shissler & Hall, for defendant.

KREIDER, J., October 28, 1958.—We have before us the petition of the Pennsylvania Railroad Company, respondent, and the rule granted thereon directing plaintiffs to show cause why their petition in escheat should not be dismissed. Plaintiffs filed an answer to the rule. Similar petitions were filed and rules to show

cause obtained by the Reading Company in no. 261 and by The United Gas Improvement Company in no. 270 Commonwealth Docket 1954. The Atlantic Refining Company in no. 263 Commonwealth Docket 1954 also raised similar questions in attacking the petition in escheat presented against it by filing preliminary objections thereto raising: (1) Questions of jurisdiction; (2) lack of capacity to sue and nonjoinder of necessary party; (3) motion for more specific pleading; (4) motion to strike; and (5) demurrer.

Frank B. Murdoch and Leo Weinrott[1] were the original plaintiffs in each of these four cases, which involve the same basic legal questions. The respective respondents are corporations organized under the laws of the Commonwealth of Pennsylvania. Plaintiffs filed only one brief for all the cases which were argued and reargued together. Therefore, we will dispose of the controlling issues in all of them in this opinion.

Each of these cases involves a formal and *absolute escheat* proceeding under section 3 of the Act of May 2, 1889, P. L. 66, as amended by section 1 of the Act of July 29, 1953, P. L. 986, 27 PS §333. *Custodial statutes*, providing for the payment of moneys into the State Treasury *without escheat*[2] until the owners of the personal property involved may appear and claim the same or until it finally becomes subject to escheat to the Commonwealth if no lawful claimants appear, were not invoked. On the other hand, plaintiffs pray:

"That, after hearing, upon notice in accordance with the Acts of Assembly in such case made and provided, judgment be entered by your Honorable Court declar-

---

[1] Robert C. Duffy was subsequently appointed as a coescheator in place of Mr. Weinrott following the appointment of the latter to the Common Pleas Court of Philadelphia County on January 3, 1955. See list of Judges in the Court Below in 378 Pa. V.

[2] A typical "custodial" statute is the Act of June 25, 1937, P L. 2063, as amended, 27 PS §434 et seq.

ing that the said personal property, together with the profits, accretions and interest thereof or thereon, has escheated to the Commonwealth of Pennsylvania and *awarding the same to the escheators* for and on behalf of the Commonwealth of Pennsylvania." [3]

The property sought to be escheated is described in paragraphs 4 and 5 of plaintiffs' petition in escheat, as follows:

"4. Certain personal property held or owing by the respondent has been and has remained *unclaimed* for the period of *seven successive years* or more prior to the institution of this action, or *the owners* or beneficial owners of, or persons entitled to, such personal property, *or the whereabouts* of such owners, beneficial owners or persons entitled, have been and have remained *unknown* for the said period of *seven successive years* or more prior to the institution of this action.

"5. The said personal property consists of the following:

"Shares of capital stock of the respondent;

"Dividends declared by the respondent upon its shares of capital stock, or payable by the respondent upon the shares of capital stock of other corporations;

"Bonds, indentures or other formal instruments of indebtedness issued or assumed by the respondent;

"Interest due by the terms of bonds, indentures or other formal instruments of indebtedness issued by the respondent, or by the terms of coupons attached to such bonds, indentures or other formal instruments of indebtedness at the time of issue thereof;

"Moneys payable by the respondent to its employees as wages;

"Amounts deducted by the respondent from the wages of its employees on account of the purchase of

---

[3] Italics throughout ours unless otherwise noted.

United States Government bonds, or on account of the purchase of shares of capital stock of the respondent;

"Moneys deposited with the respondent by those with whom the respondent has carried on its business;

"Moneys held or owing by the respondent under the terms of agreements and transactions entered into between the respondent and other persons."

The value of the above-mentioned property is not set forth in any of the petitions in escheat but plaintiff-escheators allege in paragraph 7 of their petition that respondent has information as to the individual amounts of the moneys or other personal property held or owing by respondent, the names and last known addresses of the persons shown on the records of respondent as the owners or beneficial owners of, or persons entitled to such personal property, and has other information relating to the said personal property.

In the Pennsylvania Railroad Company case the record shows that respondent company filed a request for admissions under Pa. R. C. P. 4014, which request has not been contested, and that exhibits 2 and 3 attached thereto show that the value of the personal property in the hands of the Pennsylvania Railroad Company which plaintiffs seek to escheat is apparently $4,050,000.

### The History of These Proceedings

On November 9, 1954, Frank B. Murdoch and Leo Weinrott, Esqs., were appointed escheators of the Commonwealth of Pennsylvania by the Hon. Otto F. Messner, who was then Secretary of Revenue of the Commonwealth. By successive stipulations, the respective respondents were granted extensions of time to March 31, 1955, within which to file motions, preliminary objections or other pleadings to the petitions in escheat. On January 12, 1955, the joint appointment of Mr. Murdoch and Mr. Weinrott was *revoked* by the Secretary of Revenue, Mr. Weinrott shortly

theretofore having been appointed a judge of the Court of Common Pleas of Philadelphia County. The next day, January 13, 1955, the Secretary of Revenue appointed the said Frank B. Murdoch and Robert C. Duffy, Esqs., of Philadelphia escheators of the personal property above described but it was not until two years and two months thereafter, following the first argument before the court en banc, that a paper captioned "Voluntary Substitution of Frank B. Murdoch and Robert C. Duffy as parties Plaintiff" was filed of record on March 18, 1957. Within two weeks thereafter each respondent corporation in these four cases filed a petition for a rule to show cause why the statement of voluntary substitution of Frank B. Murdoch, and Robert C. Duffy as parties plaintiff should not be stricken off. Appropriate rules were granted on the said petitions and subsequently all the cases were reargued. Plaintiffs' counsel informed the court en banc at the argument that Judge Weinrott acquiesced in Mr. Duffy's appointment in his stead.

### Questions Involved

The controlling questions in each of these four cases appear to be the following:

I. Does the Act of 1889 or the amendatory Act of 1953 furnish a procedure for escheat of the property named in plaintiffs' petition in escheat?

II. Does the amendatory Act of 1953 apply to the subject matter sought to be reached in this action since the petition in escheat is based on facts which allegedly occurred prior to the effective date of the act?

III. Should the petition in escheat be dismissed with respect to obligations as to which the statute of limitations had already run at the effective date of the Act of 1953?

IV. Should the petition in escheat be dismissed as to property which became escheatable more than 21 years prior to the date of the filing of the petition?

V. Are moneys payable on wage claims or held and owing under commercial agreements and dividends unclaimed as to outstanding shares of stock, escheatable under the amendatory Act of 1953?

VI. Is the Act of 1953 unconstitutional?

VII. Do plaintiff-escheators have the legal authority to maintain this action?

*Discussion*

## I.

Does the Act of 1889 or the amendatory Act of 1953 furnish a procedure for escheat of the property named in plaintiffs' petition in escheat?

The respective respondents contend that neither the Act of 1889 nor the amendatory Act of 1953 furnishes a procedure for the absolute escheat of the property named in plaintiffs' petition. Plaintiff-escheators assert, on the other hand, that all conditions precedent to the right of escheat have been pleaded. Respondents argue, however, that plaintiffs may proceed *only* under the Act of 1889 and not under the Act of 1953. They say that the escheators were *commissioned* to act *only* under the Act of 1889 and that since the personal property set forth in paragraph 5 of the petition in escheat is *not* encompassed in the Act of 1889, *plaintiffs have no standing to include it in their petition in escheat.* Moreover, respondents aver that the escheators have not set forth in their petition *any* property which was escheatable under the Act of 1889, which, they say, applies *only* to property of an *"intestate without heirs of known kindred, a widow or surviving husband"* or property in the hands of a trustee where the beneficiary is *unknown* for seven years, or where, upon the termination of a trust, or in the case of a dry trust, there is no lawful owner: Act of 1889, sec. 1, 27 PS §1. Respondents say that plaintiffs' petition in escheat does not mention any such property and that therefore un-

der the Act of 1889 the petition in escheat should be dismissed.

It is true that the Secretary of Revenue's commission to the escheators refers to the Act of May 2, 1889, P. L. 66, and does not mention the amendatory Act of 1953. It does, however, refer to "said Fiscal Code", and recites that information had been given according to law by Michael Edelman and A. Jere Creskoff of Philadelphia, to the effect that there were "unclaimed moneys in the Pennsylvania Railroad Company whereby the said property and estate has escheated to the Commonwealth." The commission further recites:

"That I, Otto F. Messner, Secretary of Revenue of the Commonwealth of Pennsylvania, by virtue of the authority aforesaid, have appointed, and by these presents do appoint Frank B. Murdoch and Leo Weinrott, Esquires, of Philadelphia, Pennsylvania to be Escheator of said property, with *full power* and authority *to act* in the premises *as the law directs*, and *to exercise all the powers appertaining to said appointment as Escheator*, and to do and to perform all such duties as are required by law to be done, in pursuance of the provisions of said act of May second, one thousand eight hundred and eighty-nine, entitled 'An act defining and regulating escheats in cases where property is without a lawful owner, and providing for more convenient proceedings relative to the same', and said 'The Fiscal Code.' "

We believe that the interpretation of the circumstances and the law respondents insist upon is too literal and unrealistic. It is not likely, as a practical matter, that the Secretary of Revenue on November 9, 1954, would have appointed these escheators to proceed *only* against property in the narrow field prescribed by the Act of 1889 viz., trust property without a lawful owner, or property of an "intestate, without heirs or known kindred, a widow or surviving hus-

band." The Secretary of Revenue must be presumed to have been familiar with the provisions of the amendatory Act of 1953 and the subject matter contained in the informations given to the Department of Revenue by Edelman and Creskoff almost 20 years prior to the issuance of the commission in question to plaintiffs herein. The Secretary must have had knowledge of the property sought to be escheated by Edelman and Creskoff and the resulting litigation and decision of the Supreme Court of Pennsylvania. See Edelman v. Boardman, 332 Pa. 85 (1938),[4] reversing the lower court's decision in 45 Dauph. 130. Mr. Justice Stern, speaking for the Supreme Court said, at pages 86-88:

"During the period between April 12 and October 19, 1935, plaintiff filed with the Department of Revenue of the Commonwealth of Pennsylvania thirteen documents which purported to be informations in escheat. *One hundred and fifty-eight railroad, public utility, and industrial corporations were named,* [a] and as to each there was designated an amount alleged to represent dividends declared by the corporation but unpaid, or debts or matured interest on debts owing by it, or stock issued or authorized to be issued but undelivered, *all of which property, it was asserted, had escheated to the Commonwealth* because the rightful owners of the dividends, interest and stock, and the persons to whom the debts were owing, were unknown to the corporations, their officers, directors or agents,

---

[4] In that case A. Jere Creskoff, who is one of the informers, mentioned in the commission issued to plaintiff-escheators in the instant case, was of counsel for Edelman.

(a) The following footnote appears in the opinion of the Supreme Court: None of these were corporations engaged in receiving deposits of money, securities, or other property, for safekeeping. See The Fiscal Code of April 9, 1929, P. L. 343, sec. 1305.

or to any other person, and, in the case of the debts, the rightful owners had 'asserted no rights of ownership of such debts' against the corporation. One of the informations alleged that escheats had occurred of certain customers' deposits in the custody of the corporations named, and that such customers' deposits had no rightful owners. The total amount of property listed as escheatable amounted to upwards of *sixteen million dollars.* ·

"Conferences were had between plaintiff, other persons who had informed as to similar property, and representatives of the Departments of Revenue and Justice. On April 12, 1937, the Secretary of Revenue commissioned escheators for the purpose of recovering the property from certain of the corporations listed by plaintiff, but told the escheators they were not to take any action until they received further instructions. *Ten days later he recalled the commissions.* On June 7, 1937, plaintiff initiated the present proceedings in the Court of Common Pleas of Dauphin County by filing a petition for the issuance of a mandamus to compel the Secretary of Revenue 'to afford to your petitioner an opportunity to prosecute with effect the right of the Commonwealth to the property escheated according to the writings filed by your petitioner with the Department of Revenue according to law and to that end that he either appoint and commission escheators or request the Attorney General to prosecute said escheats, affording to your petitioner an opportunity to procure the necessary evidence and to cooperate in the prosecution of the escheats.' A return was filed by defendant and a traverse by plaintiff, testimony was taken, and the court below entered judgment for plaintiff and decreed that a peremptory mandamus issue as prayed for."

The Supreme Court, in reversing, held that it was within the discretion of the Secretary of Revenue to

institute escheat proceedings or refrain from acting, according to his belief or disbelief of the truth of the facts alleged and according to the degree of certainty or uncertainty of the law respecting the escheatability of the property as to which information was given.

We are of the opinion that when the Secretary of Revenue in the instant case appointed Messrs. Murdoch and Weinrott as escheators on November 9, 1954, and two and one-half months later on January 12, 1955, revoked their commission but on the *following* day appointed the said Murdoch and Duffy, the intention of the Secretary and all other parties concerned was that the escheators should act under the Act of 1889 *as amended and enlarged by the* Act of 1953.

The Secretary clothed the escheators *"with full power and authority to act in the premises as the law directs,* and to exercise all the powers appertaining to said appointment as Escheator, and to do and to perform all such duties as are required by law to be done, . . ."* We think these clauses, though followed at the end of the paragraph with a reference to the Act of 1889 *but also* to The Fiscal Code, were meant to refer to and include the power and authority appertaining to the appointment of escheators *as the law stood on the date they were appointed,* to wit, November 9, 1954, and January 13, 1955, the former date being more than one year and three months *after* the effective date of the amendatory Act of 1953 and The Fiscal Code of April 9, 1929, P. L. 343, as amended by the Act of July 17, 1953, P. L. 474, secs. 1 and 2, and the Act of August 19, 1953, P. L. 1146. It is to be noted, moreover, that section 6 of the amendatory Act of July 29, 1953, P. L. 986, provides: "The provisions of this Act shall become *effective immediately* upon final enactment; and shall apply to all proceedings now pending and to proceedings hereafter instituted." Consequently respondent's contention that plaintiffs' petition in escheat

is fatally defective under the Act of 1889 and also under the Act of 1953 cannot be sustained.

A similar result must be reached as to respondent's contention that the Act of 1953 is so defectively drawn that it furnishes no procedure for determining the fact of escheat as against respondent. This contention is based on respondent's assertion that under the provisions of the Act of 1889 as amended by the Act of 1953 "those whom this court can require to act are *limited* to administrators, executors, trustees, depositories of the court, receivers, and other officers of the court," and that it is apparent from the very terms of the act itself that no citation can issue to respondent since it falls within none of the enumerated categories. Section 3(b) of the Act of 1953, 27 PS §42(b) provides:

"(b) The said court shall have power to issue a summons or citation, directed to any administrator or executor, trustee, depository of the court, receiver, or other officer of the court, to show cause, if any they have, why they should not file a true and accurate account of all and singular the said property alleged to have escheated as aforesaid; and if, upon sufficient proof by oath or affirmation of the service of said summons or citation, no good and valid cause be shown to the contrary, the said court shall proceed to direct said administrator or executor, trustee, depository of the court, receiver, or other officer of the court, to file his said account. . . ."

We think the petition in escheat in this proceeding is not dependent upon the issuance of a summons or citation "directed to any administrator or executor, *trustee*, depository of the court, receiver or other officer of the Court, to show cause, if any they have, why they should not file a true and accurate account." Plaintiff-escheators have not made such a request and

we do not agree that without such a summons or a citation the filing of the petition is a vain act.

Paragraph (c) of section 3 of the Act of 1953 provides that "a copy of the petition shall be served upon the corporation or other person by whom the property is held or owing as respondent . . ." and that "the respondent *shall*, within twenty days after service of the said petition, *file an answer thereto*, setting forth the name and address, if known, of every person having an interest in the property, together with any other facts relative thereto of which the respondent shall have knowledge, and whether any claim to the property has been made upon or against the respondent."

Under the facts in this case, it does not appear that a citation or summons directed to any fiduciary is required. Since we are of this opinion, it is not necessary to decide whether respondent stands in the capacity of a *trustee* as to customers' unclaimed deposits of money for service or unclaimed wages or dividends. See, however, Escheat of $92,800, 361 Pa. 51. In that case, cash in the amount of $92,800 was found in a box in the cellar of a house owned and occupied by one Lieberman. The latter disclaimed knowledge of the money and turned it over to the Philadelphia Bureau of Police where it came into the protective custody of James H. Malone, Director of Public Safety. Thereafter Lieberman and his wife claimed ownership of the money as finders thereof in the escheat proceeding which ensued. In determining whether the petition pleaded a prima facie case of escheat under the laws of the Commonwealth, Mr. Justice, now Chief Justice, Jones stated, at page 57:

"It is, of course, the duty of a petitioner for escheat 'clearly to aver a case within some act or acts of assembly': Commonwealth ex rel. v. Pennsylvania Co., 339 Pa. 513, 516, 15 A. 2d 280. The petition in the

instant case fully supplies the legal requirements of the situation. The Act of April 17, 1869, P. L. 71, is still in force: Commonwealth ex rel. v. Pennsylvania Co., supra. Section 3 of that Act (27 PS §332) provides that 'Whenever any trustee, bailee or other depositary is or shall be seized or possessed of property, real, personal or mixed, as a fiduciary agent, which properly is or shall be without a rightful owner, the same shall escheat to the commonwealth, subject to all legal demands on the same.' This statutory provision relates to a situation such as the instant case presents where the rightful owner is *unknown* and not merely unlocateable: see Rosenfeld's Appeal, 337 Pa. 183, 186, 10 A. 2d 570. According to the averments of the petition, Director Malone is possessed of the funds in controversy in a *fiduciary capacity* and not as the owner or a claimant thereof. *He is*, therefore, *a trustee or depositary within the meaning of the Act.* In Vosburgh's Estate, 279 Pa. 329, 332, 123 A. 813, it was said that 'Every deposit is a trust, except possibly general bank deposits; every person who receives money to be paid to another or to be applied to a particular purpose is a trustee, if so applied as well as when not so applied.' The foregoing is a paraphrase of an earlier quotation in Warner, Assignee v. McMullin, 131 Pa. 370, 381-382, 18 A. 1056, from an opinion by Chancellor Kent in Kane v. Bloodgood, 9 Johns Ch. 90, cited also in York's Appeal, 110 Pa. 69, 79, 2 A. 65."

See also Commonwealth v. Woodlands Cemetery Co., 9 D. & C. 2d 589 (1956), Court of Common Pleas No. 6, Phila. Co. That case involved a formal or absolute escheat proceeding. In passing upon a contention somewhat similar to that raised in the instant case, namely, that the Act of 1953 furnishes no procedure for determining the fact of escheat as against respondent, Judge Flood said on page 593:

"We doubt the correctness of respondent's objection in paragraph 13 that the accounting provision of the Act of 1889, as amended, is inapplicable to it. *A careful reading* of paragraph (b) of section 2, paragraph (b) of section 3 and paragraph (a) of section 4, all of the amending Act of July 29, 1953, supra, *indicates that the term 'trustee' has been employed in its broad sense of fiduciary.* The escheator's position that respondent holds the property as a fiduciary, while perhaps a conclusion, should be taken as true prior to hearing the evidence for the purpose of deciding this petition. We, therefore, hold this objection invalid. Proper use of the provisions for discovery and inspection should make unnecessary any summons or citation for an accounting." See In re Harrisburg Bridge Co., 48 Dauph. 274 (1940), declaring a trust as to unclaimed dividends.

## II.

Does the amendatory Act of 1953 apply to the subject matter sought to be reached in this action since the petition in escheat is based on facts which allegedly occurred prior to the effective date of the act?

As heretofore stated, the Act of 1953, 27 PS §333 (b), (c), (d), (e), amends section 3 of the Act of 1889, as amended by the Act of May 11, 1911, P. L. 281, by adding to section 3 of the Act of 1889 the following subsections:

"(b) Whensoever the owner, beneficial owner of, or person entitled to any real or personal property within or subject to the control of the Commonwealth or the whereabouts of such owner, beneficial owner or person entitled *has been* or shall be and remain *unknown* for the period of *seven successive years*, such real or personal property, together with the rents, profits, accretions and interest thereof or thereon, shall escheat to the Commonwealth, subject to all legal demands on the same.

"(c) Whensoever any real or personal property within or subject to the control of this Commonwealth has been or shall be and remain *unclaimed* for the period of *seven successive years*, such real or personal property, together with the rents, profits, accretions and interest thereof or thereon, shall escheat to the Commonwealth, subject to all legal demands on the same.

"(d) Whensoever any real or personal property within or subject to the control of this Commonwealth *is or shall be without a rightful or lawful owner*, such real or personal property, together with the rents, profits, accretions and interest thereof or thereon, *shall escheat to the Commonwealth*, subject to all legal. demands on the same.

"(e) This section shall not apply to corporations which are engaged in receiving deposits of money, securities or other property for safekeeping."

Respondents contend that the present proceeding under the amendatory Act of 1953 is an attempt to give the escheat statute a retroactive operation and that therefore the personal property mentioned in the petition in escheat in fact cannot be escheated. Respondents contend that the petition in escheat can be maintained *only* with respect to items as to which the seven-year period set forth in the Act of 1953 has run in its entirety after the effective date of the act, which is July 29, 1953. In the *alternative*, respondents aver that the right to escheat can exist only with respect to items as to which the seven-year period *first* expires *after* the effective date of the act. Both of these contentions, they say, rest on the fact that the Act of 1953 is, and is intended to be, prospective only and does not have any retroactive effect. Similar contentions were made in Commonwealth v. Woodlands Cemetery Co., supra. There Judge Flood in an opinion sur rule to dismiss, said, page 591:

"Respondent contends in paragraph 7 that the escheat act cannot be applied to property first made escheatable by the Act of July 29, 1953, P. L. 986, 27 PS §333, until either the running or the expiration of the seven year period after the effective date of the statute.

"In section 6 of the Act of July 29, 1953, supra, the legislature declared that the act 'shall apply to all proceedings now pending and to proceedings hereafter instituted.' Respondent argues that the effect of section 6, supra, is to require only that the procedural provisions of the act be applied to the present proceedings and to preclude the use of any substantive provisions until the expiration of some statutory period after the enactment date. However, we fail to see any basis for so distinguishing between the procedural and substantive provisions. If the legislature had intended that distinction, it would have said so.

"The contention has been twice ruled upon adversely to the respondent, although without discussion, in one case by declaring an escheat prior to the expiration of the relevant period of time after the enactment date and in the other by ordering payment into the State Treasury without escheat under similar circumstances. *Commonwealth v. The Finance Company of Pennsylvania*, 2 D. & C. 611 (1922) ; *Commonwealth v. Girard National Bank*, 1 D. & C. 535 (1922). While our Supreme Court does not seem to have passed upon the matter, we think in the light of the above authorities that this objection should not be sustained."

Plaintiff-escheators in the instant case contend that no question of retroactivity is involved because the statute deals entirely with conditions as they existed at the time the statute became effective or shall exist at the time an action is instituted thereafter. Plaintiffs further contend that the mere circumstance that all or some of the conditions which existed at the time the

statute became effective also existed prior to that time, or that the property forming the subject matter of the escheat proceeding was in being at the time the statute was enacted, is immaterial, so long as the property is in being at the time the action is instituted.

It is true that a basic canon of statutory interpretation is that: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature": Section 56 of the Statutory Construction Act of May 28, 1937, P. L. 1019, article IV, sec. 56, 46 PS §556; Baker v. Retirement Board of Allegheny County, 374 Pa. 165, 168 (1953); Bowie Coal Company Petition, 368 Pa. 102, 107 (1951).

Respondents argue that the words "shall escheat" in subsections (b), (c) and (d) of section 3 of the Act of 1889 as amended by the Act of 1953, sec. 1, 27 PS §333, supra, are obviously in the future tense and are a clear indication that the act is prospective and applies only to property as to which the operative events necessary for escheat occur after the date of the act. We think respondents' contention cannot be sustained. Section 6 of the Act of 1953 states that the provisions of the act shall apply to proceedings *now pending* and to proceedings hereafter instituted. We are unable to understand how a proceeding "now pending" could possibly deal with items seven years old, if the seven years could commence only from or after the effective date of the statute. Moreover, paragraphs (b) and (c) of section 3 of the Act of 1889, as amended, provide that those amendatory provisions apply to property the owner of which *"has been"* unknown, or whose whereabouts "has been" unknown, or which property *"has been"* unclaimed for a period of seven successive years and subsection (d) provides that: "Whensoever any real or personal property within or subject to the control of this Commonwealth *is or shall be* without a

rightful or lawful owner, . . . [it] shall escheat to the Commonwealth. . . ."

We are of the opinion that in view of the above language, no question of retroactivity is involved in the Act of 1953. The personal property sought to be escheated in the instant proceeding apparently "has been" in existence and unclaimed since the information described in plaintiff-escheators' commission was filed by Michael Edelman during the period between April 12 and October 19, 1935 (see Edelman v. Boardman, 332 Pa. 85, 86 (1938), supra), and another information was filed by A. Jere Creskoff on May 25, 1937, as alleged on page 231 of the brief of the Atlantic Refining Company, respondent in one of the present cases. It would seem, therefore, that such property is escheatable under the Act of 1953, no vested rights apparently having been acquired therein by respondents as against the Commonwealth. The law on this subject has been thoroughly summarized by Mr. Justice Benjamin R. Jones, speaking for the Supreme Court of Pennsylvania in Creighan v. Pittsburgh, 389 Pa. 569 (1957). In that case Creighan, a salaried fireman, sued the City of Pittsburgh for disability benefits under the so-called Heart and Lung Act, which, as amended, became effective immediately upon final enactment, viz., on September 27, 1951. The law of the case is set forth as follows, pages 574-576:

"Appellee became ill in March 1949, over two years prior to the effective date of the Act under which he claims. The City takes the position that the Act, was prospective only in its operation and appellee could not be included within its terms. The Statutory Construction Act of 1937 provides: 'No law shall be construed to be retroactive unless clearly and manifestly so intended.' It has been stated that this section 'raises a presumption against a construction which would give a retroactive effect to a statute, to be overcome only

by the clear and manifest intent of the legislature that the law should have such an effect.' Not only must the legislative intent be clear and manifest, but it must also appear that a retroactive construction will not destroy vested rights or impair the obligations of a contract: Anderson v. Sunray Electric, Inc., 173 Pa. Superior Ct. 566, 569, 98 A. 2d 374. An examination of the Act does not disclose any clear or manifest intent that it shall be construed retroactively.

"*The appellee is not claiming any benefits prior to the effective date of the Act but only thereafter.* A recognition of appellee's claim does not require that we place a retroactive construction on the Act, but simply that we apply the Act to a condition which existed on the date when the Act became effective even though such condition resulted from events which occurred prior to its effective date. In Burger Unemployment Compensation Case, 168 Pa. Superior Ct. 89, 77 A. 2d 737, the claimant became unemployed as the result of a strike and under the applicable unemployment compensation law was not entitled to any benefits; this strike was converted into a 'lock out' by the employer and the 'lock out' occurred before and continued after the effective date of the Act of May 23, 1949, P. L. 1738, which allowed benefits due to stoppage of work caused by a 'lock out.' The Superior Court, permitting the claimant to receive benefits beginning with the effective date of the Act, stated: 'This ruling does not contravene the legislative mandate against retroactive construction of statutes. Statutory Construction Act of May 28, 1937, P. L. 1019, §56, 46 PS §556. Where, as here, no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date. "A statute is not retrospective . . . because a part of the requisites for its action is

drawn from a time antecedent to its passing:" Endlich, Interpretation of Statutes, §280. "However, a statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation": 50 Am. Jur. Statutes, §476. See also 59 C. J., *Statutes*, §690. Rejecting a contention that the Married Women's Act of 1848 was retroactively construed when applied to women or to the property of women who were covert on the date of its enactment, Mr. Justice Rogers said, tersely and pointedly: "If the property be hers, when the act passed, there is an end to the objection, that it gives the act a retrospective effect, so as to interfere with vested rights": Goodyear v. Rumbaugh, 13 Pa. 480, 481. The books are replete with cases expounding and applying the principle.' See also: Pope v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co., 176 Pa. Superior Ct. 276, 278, 107 A. 2d 191. In Philadelphia, to Use, v. Phillips, 179 Pa. Superior Ct. 87, 95, 96, 116 A. 2d 243, it was stated: ' "A statute is not made retroactive merely because it draws on antecedent facts for its operation." Cox v. Hart, 260 U. S. 427, 43 S. Ct. 154 (1922); Malick's Petition, 137 Pa. Superior Ct. 139, 145, 8 A. 2d 494 (1939); Pope v. Pennsylvania Thresher. and Farm. Mut. Cas. I., 176 Pa. Superior Ct. 276, 107 A. 2d 191 (1954). See also Wagner v. Leser, 239 U. S. 207, 36 S. Ct. 66 (1915).' An inclusion of appellee within the orbit of the operation of this statute does not require a retroactive construction thereof." (Italics by the Supreme Court)

See also Jeffery's Estate, 333 Pa. 15, 19, 20 (1939), affirming 32 D. & C. 5, Ladner, J., and Chester County Mutual Ins. Co. v. Messner, 63 Dauph. 46, 59, 61 (1952), Neely, J.

For the foregoing reasons we believe that the various classes of personal property sought to be escheated

by the Act of 1953 are properly set forth as subjects of escheat in plaintiff-escheators' petition.

### III.

Should the petition in escheat be dismissed with respect to obligations as to which the statute of limitations had already run at the effective date of the Act of 1953?

Respondents also rely on the statute of limitations as a defense in their preliminary objections and in their petitions and motions to dismiss the petition in escheat. We think that the defense of the statute of limitations cannot be raised by preliminary objections or by demurrer. In Thomas v. McLean, 365 Pa. 526 (1950), the Supreme Court, in an opinion written by Mr. Justice Jones, said, on page 527 (footnote) :

"The statute of limitations is an affirmative defense to be pleaded in a responsive pleading under the heading 'New Matter': See Rule 1030 of the Pennsylvania Rules of Civil Procedure. It is not, therefore, a proper subject of preliminary objections." See also Quaker City Chocolate and Confectionery Company v. Delhi-Warnock Building Association, 357 Pa. 307, 314 (1947).

The defense of the statute of limitations therefore is not properly before the court at this time. Moreover, we do not see how this defense could be raised successfully by respondents against plaintiff-escheators, even though, for example, they might possibly raise it against a former employe who makes a belated demand for payment of unclaimed wages. The law on this subject we think was settled by the decision in the leading case of Philadelphia Electric Company Case, 352 Pa. 457 (1945), in which proceedings were instituted by the Attorney General on behalf of the Commonwealth under the Act of June 25, 1937, P. L. 2063, 27 PS §434 et seq., to require respondent-corporations to pay into

the State Treasury *without escheat* certain moneys and property held by respondents consisting of dividends or profits, debts and interest on debts, customers' advances or deposits, etc. In passing upon respondent's defense based on the statute of limitations, the Supreme Court, speaking through Mr. Justice, now Chief Justice, Jones, said, at page 463:

"The fact that the statute of limitations may have run against the owners of the property in controversy as between them and the accountable corporate custodian does not operate to defeat the Commonwealth's escheatage: Commonwealth ex rel. v. Cunningham, 337 Pa. 289, 297-298, 10 A. 2d 559. A statute of limitations provides a procedural limitation but does not deal with substantive rights. In Germantown Trust Co. v. Powell, supra [265 Pa. 71], at p. 83, this Court upheld Section 15 of the Act of 1915 (27 P. S. §261). That section is substantially the same as Section 13 of the Act of 1937 which provides that 'The bar of statutes of limitation and presumptions of payment shall not affect the duty of making reports and payments to the Commonwealth under the provision of this act.' "

A similar decision was reached by the Supreme Court Court of the United States in the oft cited case of Campbell v. Holt, 115 U. S. 620 (1885), wherein it was said that, page 624: ". . . the statute of limitations does not destroy nor pay the debt . . ."

## IV.

Should the petition in escheat be dismissed as to property which became escheatable more than 21 years prior to the date of the filing of the petition?

In addition to the general assertion of the defense of the statute of limitations, respondents present a *second* defense involving the statute of limitations as to property "which became escheatable *more than 21 years* prior to the date of filing the petition." Respon-

dents say the Commonwealth is barred by the provisions of section 26 of the Act of May 2, 1889, P. L. 66, 27 PS §101, which provides:

"Whensoever any property hath escheated or shall escheat to the commonwealth by reason of the death of the owner last seized or possessed thereof, *intestate* without heirs or known kindred, a widow or surviving husband, and there have been no proceedings had, as and for an escheat, for the period of *twenty-one years after the decease of the said owner*, the commonwealth shall thereafter forever be debarred from claiming the same as escheated and that whether such period hath already elapsed, or whensoever hereafter it shall have fully elapsed."

Plaintiff-escheators concede, as indeed they must, that the position of respondents is correct insofar as section 26 of the Act of 1889 limits the time within which the Commonwealth may proceed where property escheats by reason of the death of the owner. Plaintiffs say, however, that section 26 sets forth the *only* situation in which the Commonwealth is barred and that had the legislature intended that the Commonwealth should be so limited in every case of escheat, including cases in which escheat occurred on grounds other than the death of the owner, it would have so provided. The fact that the legislature has not so provided, except as to escheat upon death, seems to indicate that the legislature did not intend that the 21-year period should apply in any other situation.

## V.

Are moneys payable on wage claims or held or owing under commercial agreements and dividends unclaimed as to outstanding shares of stock, escheatable under the amendatory Act of 1953?

The Act of 1889, as amended by section 5 (*a*) of the Act of July 29, 1953, P. L. 986, 27 PS §111, provides that:

"(a) The term 'real or personal property,' as used in this act, shall mean and include all real property and all interests therein, whether legal or equitable, and moneys, negotiable instruments, instruments of indebtedness under seal, instruments of indebtedness not under seal, mortgages, choses in action, claims, debts, demands, shares of capital stock or other rights in corporations, dividends, deposits, and every other form of personal property, tangible or intangible, and all interests therein, whether legal or equitable."

Respondent contends that *wages* are not legally the subject of escheat and that it was so held by this court in In re Pennsylvania Railroad Company, 48 D. & C. 611 (1943), a proceeding brought in equity by the Attorney General. In that case, pursuant to The Fiscal Code of April 9, 1929, P. L. 343; 72 PS §1, et seq. at the request of the Department of Revenue, the Attorney General petitioned this court for the escheat and award to the Commonwealth of certain unclaimed wages earned by former employes of respondent, aggregating $590,-851.06, plus the increments thereof. The Commonwealth apparently relied on two acts relating to escheat, contending that the funds were subject to escheat as being either: (1) Funds held in trust and escheatable under the Act of April 17, 1869, P. L. 71, as partially supplied (27 PS §332); or (2) funds held by certain agencies included in the scope of the Act of June 7, 1915, P. L. 878, as amended and incorporated into The Fiscal Code.

The Dauphin County Court, speaking through Judge Rupp, held that the unclaimed wages were not held in trust and that the method by which the railroad company segregated unclaimed wages for a time was "only an employer-debtor's acknowledgment of, and his efforts to discharge a debt owed his employees-creditors for services rendered" and that "accordingly, the moneys claimed are not escheatable under the Act of

April 17, 1869, P. L. 71, as partially supplied, 27 PS §332, nor under any other statutory provisions permitting the escheat to the Commonwealth of funds held in trust." It was also held in that case that the Commonwealth was not entitled to an award of escheat by virtue of the Act of June 7, 1915, P. L. 878, as amended and incorporated in The Fiscal Code, supra, which provides for the escheat of unclaimed money or property held by certain corporations engaged in receiving deposits of money, securities or other property for safekeeping.

It should be noted that Judge Rupp was construing the Act of April 17, 1869, P. L. 71, and the Act of June 7, 1915, P. L. 878, as amended. The act under which plaintiff-escheators are proceeding in the instant case did not become law until 1953, 10 years after his decision. Furthermore, in that case (in re Pennsylvania Railroad Company, supra) this court regarded an unclaimed wage as a "debt" owed by the company. In any event, the holding in the former case, which apparently was not appealed, that unclaimed wages cannot become the subject of a *trust* or subject to escheat "under any other statutory provisions permitting the escheat to the Commonwealth of funds held in trust," would appear to be inapplicable to the instant case wherein no trust theory is relied upon by plaintiffs. Here, respondent Pennsylvania Railroad Company asserts in its brief, page 26: ". . . that as to *wage claims which are simple debts*, the Petition in Escheat should be dismissed because the Act of 1953 cannot apply, either as a matter of construction or as a constitutional matter."

Section 5 of the Act of 1953, supra, makes debts escheatable and the Supreme Court of Pennsylvania, speaking through our present Chief Justice, said in the Philadelphia Electric Company Case, 352 Pa. 457 (1945), at page 462:

"Dividends or profits declared by any corporation and any debt or interest on debt owed by a corporation were made 'escheatable to the Commonwealth' by the Act of June 7, 1915, P. L. 878, Section 7 (27 PS §282). The Act of 1915, as amended by the Act of April 21, 1921, P. L. 223, further provided that '. . . any moneys or property held by any . . . corporation . . . belonging to any other person, the escheat of which is not otherwise provided for in this section, . . . shall be escheatable to the Commonwealth. . . .' "

In the latter case, as well as in the companion Pennsylvania Power & Light Company Case, 352 Pa. 466, the proceedings were instituted, as heretofore stated, in the court below by the Attorney General in behalf of the Commonwealth under the Act of June 25, 1937, P. L. 2063, 27 PS §434 et seq., and were designed to require the respondent companies to pay into the State Treasury *without escheat* certain moneys and property held by the respondents consisting of dividends or profits, debts and interest on debts, customers advances, tolls or deposits, stock or certificates of beneficial interest, all of which had been reported annually by the respondents to the Secretary of Revenue as required by the Act and which had remained unpaid and unclaimed for six or more successive years. Despite the fact that in those two cases the proceedings were brought, as stated, by the Attorney General to pay into the State Treasury without escheat the moneys and property described, we think the reasoning in support of those decisions is applicable to the case at bar. Consequently, we hold that unclaimed wages, moneys held under customer's deposits and dividends on outstanding shares of stock are escheatable under the amendatory Act of 1953. We believe that the *obligation* of the respondent to their employees for wages is a debt, or claim, or demand within the meaning of the Act of 1953 and is subject to escheat, as are the other items

of personal property mentioned in the Petition. We cannot accept the respondent's argument that the unclaimed moneys payable to its employees as wages are not the property of the employees but are the respondent's moneys and therefore not escheatable. As was said in Connecticut Mutual Life Insurance Co. v. Moore, 333 U. S. 541, at page 548 (1948) :

". . . The statutory reference to 'any moneys held or owing' does not refer to any specific assets of an insurance company, but simply to the obligation of the life insurance company to pay."

In the Matter of Certain Moneys in the Custody of Harrisburg Gas Company, 48 Dauph. 284 (1940), the late President Judge Hargest of this court, in reviewing the history of the statutory law of Pennsylvania with respect to escheats, said, at page 289, 290 :

"The next Act is the General Escheat Act of May 2, 1889, P. L. 66, 27 P. S. Sec. 41, et seq. As its title indicates, it was to supply a new system with reference to escheats, 'and providing for more convenient proceedings relative to the same.' Section 1 of the Act of 1889 provides:

" 'That from after the publication of this act, if any person, who at the time of his death was seized or possessed of any real or personal estate within this Commonwealth, has died or shall die intestate, without heirs or known kindred, a widow or surviving husband, such estate of whatsoever kind the same may be, whether legal or equitable, or whether the same was held by the said person in severability or as tenant in common, co-tenant, joint tenant or in partnership with any other person or persons, shall escheat to the Commonwealth, subject to all legal demands on the same.'

"The procedural sections of the Act of 1889 supply the cumbersome proceedings of the Act of 1787, [Act of September 29, 1787, 2 Sm. L. 425], but unless the broad language of the first section of the Act of 1889,

which provides for the escheat of any real or personal property 'of whatsoever kind the same may be, whether legal or equitable,' is intended to cover everything that Section 8 of the Act of 1787 and the Act of 1823 [Act of March 29, 1823, P. L. 161], covered, then those sections are still in force. *We have no difficulty*, in view of this statutory history, of concluding that *under these three statutes 'claims or demands'* were *escheatable* at the time of the passage of the Act of 1937." See also Germantown Trust Co. v. Powell, 265 Pa. 71, 87; Cunnius v. Reading School District, 206 Pa. 469, affirmed 198 U. S. 458, 467 (1905); In re Escheat of Moneys in Custody of United States Treasury, 322 Pa. 481, 485 (1936), and the same case in 326 Pa. 260, (1937), affirmed in 303 U. S. 276; Standard Oil Co. v. New Jersey, 341 U. S. 428 (1951).

## IV.

Is the Act of 1953 unconstitutional?

Respondents contend that the Act of 1889, as amended by the Act of 1953, is unconstitutional for the following reasons:

1. That the application of the Act of 1953 to the property enumerated in the petition in escheat violates the due process and impairment of contract provisions of the State and Federal Constitutions;

2. That it purports to give the Commonwealth the right to take private property without just compensation;

3. That it does not contain adequate provision for notice of the escheat proceedings to the owners of the property;

4. That as applied to nonresidents, the statute violates the due process and full faith and credit clauses of the Federal Constitution;

5. That the title of the act violates article III, sec. 3 of the Pennsylvania Constitution.

1. Due process and impairment of contract

Respondents contend that the amendatory Act of 1953 violates the due process and impairment of contract provisions of the State and Federal Constitutions. We have considered all the arguments made by each of them in this regard but are unable to discover a violation of either the State or Federal Constitution. We think the law on this subject was comprehensively stated by Mr. Justice Jones in the Philadelphia Electric Company Case, 352 Pa. 457 (1945), supra. While the appeals of the Philadelphia Electric Company Case, as well as in the Pennsylvania Power & Light Co. Case, 352 Pa. 466, grew out of proceedings instituted in the court below by the Attorney General in behalf of the Commonwealth under the Act of June 25, 1937, P. L. 2063, 27 PS §434 et seq., to require respondent companies to pay into the State Treasury *without escheat* certain moneys and property held by them consisting of dividends, debts, customers' advances or deposits, etc., we think the decision in those cases applies with equal force and effect to the constitutional objections made by respondents in the instant formal escheat proceedings. In the Philadelphia Electric Company Case Mr. Justice Jones, speaking for the Supreme Court, said, page 463:

"The constitutional objections made to Section 9 of the Act of 1937 may readily be disposed of. The power of the legislature to render property of the character here involved subject to escheat in favor of the Commonwealth is clear: In re Escheat of Moneys in Custody of United States Treasury 322 Pa. 481, 484-485, 186 A. 600, 326 Pa. 260, 192 A. 256, affirmed 303 U. S. 276; Germantown Trust Co. v. Powell, 265 Pa. 71, 77, 108 A. 441; Commonwealth v. Dollar Savings Bank, 259 Pa.

138, 145, 102 A. 569; Cunnius v. Reading School District, 206 Pa. 469, 471, 56 A. 16, affirmed 198 U. S. 458; Security Savings Bank v. State of California, 263 U. S. 282, 285-286. A legislative provision for escheat is a valid exercise of the police power of the State: see Cunnius v. Reading School District, supra, at p. 469 of 198 U. S. There is, therefore, no merit in the contention of the appellant companies that the Act of 1937, construed together with the Act of 1915, works a deprivation of property without due process of law. Nor do those statutes serve to impair the obligation of contracts. The constitutional guarantee in such connection is likewise subject to an appropriate exercise of the State's police power: Zeuger Milk Company v. Pittsburgh School District, 334 Pa. 277, 280, 5 A. 2d 885." See also Standard Oil Co. v. New Jersey, 341 U. S. 428 (1951).

2. The Act of 1889, as amended, does not automatically take the property of the owner without just compensation. In substitution of the right against respondent corporation, the statute gives a right against the Commonwealth itself. Section 22 of this act, 27 PS §91, provides that:

". . . any person or persons interested, or claiming to be interested, in any property, real or personal, which shall be found to have escheated to the Commonwealth, *who have had no actual notice, by citation, advertisement or otherwise,* of the pendency of any proceedings in escheat, . . . may at any time within *three years* next after the filing of the final adjudication or finding in escheat, or the absolute confirmation thereof, *traverse the same,* . . . and, in case upon the trial of said traverse, it shall be found that the property in question or any part thereof had not escheated, and that the person or persons filing said traverse are entitled to the same or any part thereof, then and in

such case, *said person or persons shall be entitled to receive and to have delivered to them possession of all such property,* real or personal, as shall not have been sold or paid into the treasury of the Commonwealth; . . .", and in case such property has been sold, *such parties are entitled to receive the proceeds of the sale,* after deducting all expenses, as their interest may appear.

In Alton's Estate, 220 Pa. 258, cited by respondent, the court said, page 272:

"The act recognizes their constitutional right to the property and provides an adequate remedy for enforcing it. But while recognizing the right and furnishing a remedy for its enforcement, the legislature restricts and limits the remedy by providing that it shall be pursued within a reasonable time. This provision does not deprive the appellees of their right to the property, but simply imposes a reasonable limitation as to the time in which it shall be enforced. The power of the legislature to furnish the remedy includes the power to impose reasonable limitations on its enforcement."

3. Notice

We believe the statutory provision for *notice* is adequate. The amendatory Act of July 29, 1953, P. L. 986, sec. 4, 27 PS §43, requires that:

". . . the said court shall make such orders relative to advertisements and notices of the proceedings, as shall best serve to inform and advise all parties having an interest, or who may have an interest in said proceedings, of the pendency thereof."

The Supreme Court of Pennsylvania in Alton's Estate, 220 Pa. 258 (1908), supra, held that an almost identical provision in the Act of 1889, prior to its amendment by the Act of 1953, met the requirement that the statute itself must make provision for adequate notice of such proceedings. At page 270 that court said:

"It is true the act provides that the court shall make such order relative to notices and advertisements at any stage of the proceedings as the court may deem proper, but manifestly that means that the notices and advertisements of the proceedings are mandatory, and simply leaves discretionary with the court the time and manner of giving the notices and making the advertisements. This was evidently the view the court below took in this case, as it made an order, not only that notice be given but that a part of the fund should be devoted to pay the expenses of the advertisements. The record discloses that advertisements were inserted in the newspapers of the localities where the relatives of the decedent, if he had any, would be found. It also appears that the administrator, by correspondence and otherwise, made every effort to notify all persons who he thought were related to the decedent of the proceedings pending for the escheat of the property. The act of assembly was, therefore, construed to require notice of the proceedings by advertisement, and advertisements were duly made, and other notices of the pending escheat proceedings were given."

See State of New Jersey v. Standard Oil Company, 2 N. J. Super. 442, 64 A. 2d 386 (1949), affirmed 5 N. J. 281, 74 A. 2d 565 (1950), affirmed 341 U. S. 428 (see especially pp. 432-435), 71 S. C. 822 (1951), citing Anderson National Bank v. Luckett, 321 U. S. 233, 243 (1944), wherein the Supreme Court of the United States upheld a Kentucky statute which authorized the State to take over abandoned bank accounts and provided for notice to the depositors by requiring the sheriff to post *on the courthouse door or bulletin board* a copy of the bank's report of deposits presumed abandoned. The court stated, at page 243:

"We think that this, in conjunction with the notice provided by the statute itself and by the taking of

possession of the bank balances by the State, is sufficient notice to the depositors to satisfy all requirements of due process." See also Security Savings Bank v. State of California, 263 U. S. 282.

In Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306 (1950), however, the Supreme Court of the United States held that statutory notice by publication is sufficient as to any beneficiaries whose interests or addresses are *unknown* to the trustee, since there are no other means of giving them notice which are more effective, but that notice by publication *is not sufficient* under the Fourteenth Amendment with respect to persons whose whereabouts *are known*, since it was not impracticable to make serious efforts to notify them at least by ordinary mail to their addresses on record with the trust company.

At this stage of the proceeding it may be assumed that the court will endeavor to order such notice as the law requires. If, subsequently, any party in interest should be of the opinion that such notice is insufficient, appropriate action is available to him.

4. Nonresidents, due process and full faith and credit clauses

Respondents say that as applied to nonresidents, the statute violates the due process and full faith and credit clauses of the Federal Constitution. Since this and the companion cases are at present in the preliminary objection stage, no answer having been filed to plaintiffs' petition in escheat nor hearing had, the court has no knowledge that the rights of any nonresidents are involved. Consequently, we do not deem it necessary at this time to pass upon these contentions made by the respective respondents in their preliminary objections and petitions and motions to dismiss the petition in escheat. We agree with the disposition of similar contentions made by the Court of Common Pleas No. 6

of Philadelphia County in Commonwealth v. Woodlands Cemetery Co., 9 D. & C. 2d 589, 592, supra, in which that court, speaking through Judge Flood, said:

"Questions which involve nonresidents, e.g. whether the Commonwealth has the power to escheat their property, ought not be decided unless the court is confronted by that situation. Any opinion we might give on this question would be advisory unless we know in fact that there are nonresident shareholders."

Reference, however, should be made again to the Philadelphia Electric Company Case, 352 Pa. 457, at page 464, wherein it was held:

"As to the contention of the appellant companies that proceedings under the Act of 1937 cannot be maintained against non-resident owners, the Supreme Court of the United States has confirmed the jurisdiction of a State over intangibles and its power to subject them to escheat even as against possible non-resident owners: see Security Savings Bank v. State of California, supra. Cf. also Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506, 514-515, affirming this Court's decision in 327 Pa. 127, 193 A. 638, where a Pennsylvania statute providing for the taxation of the shares of a domestic corporation was held to be constitutional when applied to non-resident stockholders on the ground that the property was amenable to Pennsylvania's jurisdiction."

5. The title of the Act of 1953

Respondents attack the title of the amendatory Act of 1953 as being insufficient and in violation of article III, sec. 3, of the Constitution of Pennsylvania which provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." The title of the Act of May 2, 1889, P. L. 66, is as follows:

"An Act defining and regulating escheats in cases where property is without a lawful owner, and provid-

ing for more convenient proceedings relative to the same."

The title of the amendatory Act of July 29, 1953, P. L. 986, sets forth that it is:

"An Act to further amend the act approved the second day of May, one thousand eight hundred eighty-nine (Pamphlet Laws 66), entitled 'An act defining and regulating escheats in cases where property is without a lawful owner, and providing for more convenient proceedings relative to the same,' by further defining property, property subject to escheat and beneficial owner; . . . providing for procedure; and permitting the joinder of items in escheat proceedings."

The law on the subject of a title of an act of Assembly has been stated many times by the Supreme Court of Pennsylvania. In the case of Harrisburg v. Pass, 372 Pa. 318, defendants were found guilty by an alderman of having begun the construction of a building for a proposed tourist court on a tract of land owned by them without first having secured a zoning permit required by an ordinance of the City of Harrisburg. Defendants attacked the title of the city's zoning ordinance and contended that the title did not expressly indicate that a permit from the zoning administrator was required prior to construction of the building and that therefore the title did no comply, inter alia, with the requirements of article III, sec. 3, of the Pennsylvania Constitution. In adversely disposing of appellant's contentions the Supreme Court, in an opinion by Mr. Chief Justice Horace Stern, said, at page 321:

"There has been so much previous discussion by this court in regard to the titles of legislative acts and ordinances that it would be a mere work of superrogation to attempt to add thereto. Reference is made to the principles enunciated in such authorities as Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840; Gum-

pert's Estate, 343 Pa. 405, 23 A. 2d 479; Moreland Estate, 351 Pa. 623, 42 A. 2d 63; Commonwealth v. American Gas Company, 352 Pa. 113, 42 A. 2d 161; and Commonwealth v. Fireman's Fund Insurance Company, 369 Pa. 560, 87 A. 2d 255. Those cases establish that the title of an act need not be an index of its provisions nor a synopsis of its contents, that it *is sufficient if it gives notice of its tenor to interested persons of a reasonably inquiring state of mind,* that so long as it indicates a general subject to which the provision involved is germane or incidental the provision itself is sufficiently contained therein,—in short, that the title is not objectionable unless a substantive matter entirely disconnected with the named legislation is included within the folds of the act."

It would be fruitless for this court to attempt to elaborate upon the succinct but comprehensive statement of the law as set forth in the above quotation. No further discussion of the fundamental principles involved is appropriate or required. In the instant case we merely refer again to the title of the amendatory Act of 1953 which clearly states that its purpose is "to *further amend*" the Act of 1889 by "*further defining* property, *property subject to escheat* and the beneficial owner, . . . and permit the joinder of items in escheat proceedings." We are of the opinion that the title of the Act of 1953 gives sufficient notice of the tenor of the act "to interested persons of a reasonably inquiring state of mind" and that the title indicates a general subject to which the provisions in the act are germane or incidental.

## VII.

Do plaintiff-escheators have the legal authority to maintain this action?

(a). Have the commissions of plaintiff-escheators been revoked?

Each respondent in these cases contends that the commission of the present escheators, Frank B. Murdoch and Robert C. Duffy, Esqs., is invalid because a previous commission issued on November 9, 1954, to the same Frank B. Murdoch and Leo Weinrott was *revoked* by the Secretary of Revenue about two and one-half months later, to wit, on January 12, 1955. Respondents in effect say that since the instant proceeding was instituted by Frank B. Murdoch and Leo Weinrott, escheators, this and similar petitions in escheat must fall because of the revocation of their commission under the authority of which they instituted these proceedings. Respondents say that the instant petition is dead by reason of the said revocation and that the Secretary of Revenue could not breath life into it even though he appointed the same Frank B. Murdoch the next day, January 13, 1955, as an escheator, together with Robert C. Duffy in place of Leo Weinrott. It has frequently been held that under certain circumstances the law does not recognize fractions of a day. As applied to the instant case, the revocation of Murdoch's commission could conceivably have taken effect at midnight in January 12, and his reappointment on January 13, by the same reasoning, could be considered as effective one minute or less after midnight January 12. The decision of the important issues in this case should not rest upon such split-second timing or ultra-refined technicalities.

We have carefully considered the contentions raised on this point and are of the opinion that under all the circumstances the appointment of Murdoch and Duffy on January 13, 1955, as escheators in these cases was valid and that they are not required to institute new proceedings in lieu of the original petition in escheat filed by Murdoch and Weinrott.

(b). Was the appointment of two escheators authorized?

Respondent avers that the two plaintiffs had been commissioned escheators contrary to law in that only one escheator is authorized by statute. It is claimed that throughout the Act of 1889 and the amendatory Act of 1953 the escheator is spoken of in the singular and attention is directed to those statutes (27 PS §42) which state the procedure to be followed: "Whensoever any escheator shall be duly commissioned", and The Fiscal Code which permits the Department of Revenue to appoint "some suitable person": 72 PS §614 and 72 PS §1302. Respondent vigorously contends that there is an obvious and important reason for restricting the appointment of an escheator to a *single person* authorized by the statute and that under that portion of The Fiscal Code which provides for the payment of commissions to escheators (72 PS §614) the Commonwealth will be required to pay each of two escheators his full commission, thus requiring double commissions in this case, if two escheators may act.[5] It is pointed out that

[5] In its brief the Pennsylvania Railroad Company, respondent, says:

"Allied to the question of the authority of an escheator to join several claims in one proceeding is the question of the fees to be paid to private parties in the event of the Commonwealth's acquisition of property by reason of escheat proceedings. Traditionally, escheat statutes have provided for the paymentn of fees both to persons who supply information which results in the escheat of property to the state and also to escheators, customarily on the basis of a percentage of the proceeds recovered. Prior to the amendment of the Fiscal Code in 1953 informers' and escheators' fees totaled 40% of the amount escheated. Both because of the obvious public interest in reducing these fees and because no justification for them exists with respect to property escheated or paid without escheat under statutes requiring reports, statutes such as the Act of 1915 applicable to banks and the Act of 1937 applicable to other corporations specifically prohibited the payment of informers' fees and provided for enforcement by the Attorney General. Such provisions are a strong indication of the public interest and of the specific policy of the legislature to reduce the amounts diverted to private

the statute speaks of: ". . . Every escheator appointed hereunder shall be compensated as follows: . . ."

Section 205 of The Fiscal Code of 1929, 72 PS §205, provides that the Department of Revenue "may appoint escheators, as hereinafter provided, and [may] compensate them . . .", and section 1302 of The Fiscal Code, 72 PS §1302, states that "escheators appointed by the Department of Revenue under the provisions of this Act shall exercise the powers and perform the duties heretofore exercised and performed by escheators appointd by the Auditor General." We are of the opinion that it was not the intention of the legislature when it enacted The Fiscal Code and the amendments thereto that *each* of two escheators should be paid the *full commission* set forth in the act of assembly, but the money allowed by law as a commission should be divided among all the escheators, should there be more than one. We think the same principle which is applicable in the allowance of fees to two or more execu-

---

parties from escheat proceedings. This policy has an important bearing on questions of interpretation which arise in this case."

In their answering brief plaintiff-escheators say:

"Furthermore, if the plaintiffs may be permitted to go beyond the record, as the respondent has done so frequently in its brief, it is a fact that the *Commonwealth has entered into an agreement* with the escheators and the informants that *the total fees* to be paid *to escheators and informants shall be ten percent,* after deduction of costs of the proceedings, so that the Commonwealth will receive *ninety percent.* The respondent's solicitude may be put at rest.

"The respondent pretends that it wants to save the State double commissions. What the respondent really wants is that the State shall not get what belongs to it."

Formerly the compensation of an informer was 25 percent and that of an escheator 15 percent under sections 1304 and 614 of The Fiscal Code of 1929, P. L. 343. At the present time the compensation of informers and escheators is based on a graduated scale according to section 1 and section 5 of the Act of 1953, P. L. 1146, 72 PS §§614 and 1304.

tors, administrators or trustees of an estate, or receivers in bankruptcy proceedings, applies in the instant case where there is more than one escheator. In any event, this question does not seem to be of prime importance due to the representation made to the court by plaintiff-escheators in their answering brief hereinabove referred to in which they say that 10 percent of the net amount involved in these cases will be divided among the informants and the escheators.

(c) Do the commissions issued to plaintiff-escheators authorize them to proceed under the amendatory Act of 1953?

We think this question must be answered in the affirmative and we have heretofore stated our reasons for this conclusion. It is true, as respondents say, that plaintiffs' petition in escheat seeks to reach property which was never escheatable under the Act of 1889 and "only purported to become so" upon enactment of the Act of 1953. It is also true that the latter act for the first time authorizes the escheat of property which is merely unclaimed for a period of seven years, and property without a rightful or lawful owner (27 PS §333) and that section 5 of the Act of July 29, 1953, P. L. 986, greatly expands the definition of personal property subject to escheat: 27 PS §111, supra.

It is also true that the petition in escheat in paragraphs 4 and 5 is in large part directed at such newly escheatable property and that the escheator under section 3 of the Act of 1953 (27 PS §42($b$)) may join in one petition any number of items, though held for or owing to different persons, or held for different persons or in different proceedings, in any court of this Commonwealth or of the United States. Respondent reiterates its contention that since the present plaintiffs are limited by the terms of their commissions to proceedings under the Act of 1889, the result here must be the same as in the Pennsylvania Co. case

(Commonwealth ex rel. Reno v. Pennsylvania Co., 339 Pa. 513, 1940), in short, that plaintiff-escheators may not bring against this respondent what the Supreme Court called an "omnibus" action, but must pursue individually each person or estate believed to have been the former owner of the property.

It is of course well settled that an escheator may proceed only against property made escheatable by the act under which he was appointed; but the Act of 1889 must be read with its amendment of 1953, and when so read, we think it is clear that the act provides for escheat of the character set forth in plaintiff's petition in escheat. Respondent cites Rosenfeld's Appeal, 337 Pa. 183, which was decided in 1940. There the escheator, who was appointed under the Act of 1889, contended that certain unclaimed moneys in the hands of the former Sheriff Robert E. Lamberton of Philadelphia County were escheatable to the Commonwealth. The escheator's amended petition was dismissed in the court below on the ground that the Act of April 8, 1937, P. L. 284 (declared unconstitutional by the Supreme Court in Commonwealth ex rel. Margiotti v. Cunningham, 337 Pa. 289), controlled the disposition of the funds and superseded earlier statutes relating to the escheat of unclaimed property. The Supreme Court in the Rosenfeld case pointed out on page 185, that "the escheator was appointed in pursuance of and adopted the procedure outlined in the Act of May 2, 1889, P. L. 66, Sec. 7, as amended by the Act of May 11, 1911, P. L. 281, Sec. 3, et seq., 27 PS Sec. 42 et seq., and the Fiscal Code, the Act of April 9, 1929, P. L. 343, Secs. 205, 614, 1301 and 1302, 72 PS Secs. 205, 614, 1301 and 1302. See In re Escheat of Moneys in Custody of U. S. Treasury, 326 Pa. 260, 192 A. 256."

The escheators' contention in the Rosenfeld case that the unclaimed funds in the hands of the sheriff

were subject to escheat was based upon the provisions of several statutes including the Act of 1889, P. L. 66, 27 PS §334, but the petition in escheat alleged *merely that the funds were unclaimed for seven years.* There was no allegation in the petition that the owners of the funds were unknown. In commenting on the escheators' contention, the Supreme Court, speaking through Mr. Justice Schaffer, said, page 186:

"It is true there are certain statutes in effect dealing with unclaimed property. In the strict sense these statutes are not escheat acts. The late Chief Justice Moschzisker characterized them as follows: 'In other words, it does not provide for seizing property presumed to be without an owner, but rather for the taking into possession by the sovereign Commonwealth, for the protection of both State and owner, of a certain class of property which is subject to escheat:' Com. v. Dollar Savings Bank, 259 Pa. 138, 144, 102 A. 569. See also Germantown Trust Co. v. Powell, 265 Pa. 71, 108 A. 441.

"The Act upon which appellant relies is the Act of June 7, 1915, P. L. 878, Sec. 7, as amended by the Act of July 6, 1917, P. L. 725, Sec. 4, and the Act of April 21, 1921, P. L. 223, Sec. 5, 27 PS Sec. 282, which provides: 'After any moneys or property held by any person, . . . belonging to any other person, the escheat of which is not otherwise provided for in this section, has been and remained unclaimed, by the person for whom the same is held, for a period of seven or more successive years, such moneys or property shall be escheatable to the Commonwealth, and shall be escheated *in the manner hereafter provided,* with interest actually accrued thereon to the date of the decree for the escheat of the same.' " (Italics by the Supreme Court)

The Supreme Court pointed out that the act upon

which the escheator relied carried its own enforcement provisions and that it provided, page 187:

". . . 'Such escheat shall, at the suggestion of the Auditor General [now the Department of Revenue by the Fiscal Code, Sec. 1308, 72 PS Sec. 1308], be determined and enforced by an action in the nature of a bill in equity, filed by and in the name of the Attorney General, against the depositary, fiduciary, or debtor, and all of his or its depositors, beneficiaries, or creditors for whom he or it holds unclaimed moneys escheatable under the provisions of this act, . . .'"

In concluding its opinion in the Rosenfeld case the Supreme Court further stated, page 187:

"A subsequent section of this act, Sec. 8, 27 PS Sec. 301, makes provision for the restitution of the funds to the owners at any time within ten years upon the production of satisfactory proof.

"Hence, even if it be contended that the funds held in the possession of the sheriff are subject to the terms of this act, it is clear that they are not subject to escheat in the manner here pursued. *The statute carries its own procedure which must be followed.* If these funds are to be taken over by the Commonwealth, in accordance with the terms of this act, a bill in equity should be filed in the name of the Attorney General and the question there be determined. No provision is made in this act for the services of an escheator. Such functionary has no standing to claim an escheat under it.

"The sections of the Acts of 1889 and the Fiscal Code of 1929, supra, making provision for the appointment of escheators and outlining their duties and functions are applicable only in situations where the property sought to be escheated is without rightful owners. *Where the property in question has merely remained unclaimed* for a period of years, the legislature has provided a procedure for taking it into the

custody of the Commonwealth, with provision for its eventual escheat. In such a situation, an escheator has no authority and is without standing.

"Petition dismissed at appellant's cost."

We think there would be great force in respondents' argument that escheators cannot be appointed in the instant case in view of the decision in Rosenfeld's Appeal, supra, and the declaration of the legislative policy as expressed in the Act of June 25, 1937, P. L. 2063, sec. 1, as amended by the Act of June 24, 1939, P. L. 660, 27 PS §434, were it not for the fact that 13 years after Rosenfeld's Appeal the legislature saw fit to amend the Act of 1889 and thus *provided for the appointment of escheators* by the Department of Revenue *with respect to the additional types of personal property* made escheatable by the amendatory Act of 1953. By the latter act, the legislature, as respondent has pointed out, created a new class of personal property which is now made escheatable together with that enumerated in the Act of 1889. The Department of Revenue of the Commonwealth, however, is *still empowered to exercise its discretion* whether to appoint escheators as was done in the instant case, or whether to request the Attorney General to bring escheat proceedings or, in the alternative, a proceeding without escheat. We are of the opinion, therefore, that the commissions issued to plaintiff-escheators authorized them to proceed under the Act of 1889, as amended by the Act of 1953.

Each respondent in these cases attacks the petition in escheat for failing to set forth: (1) The residence county of plaintiff-escheators, and (2) the nature and character of the alleged escheat and also the location, character and amount of the property alleged to have escheated or the name and address of the person having the same in his possession.

(1) With respect to alleging the residence county of the escheator in his petition, two acts of assembly should be considered. Section 3 of the Act of July 29, 1953, P. L. 986, 27 PS §42(*a*), provides that the escheator:

". . . shall in his petition set forth the facts of his appointment and the nature and character of the alleged escheat, and shall also state, as far as he conveniently can, the location, character, and amount of the property, real and personal, alleged to have escheated, together with the name and address of the person or persons having the same in his or their possession."

The requirement that the escheator be a resident in the county where the escheated property or the greater part of it is situate, is specifically set forth in The Fiscal Code of April 9, 1929, P. L. 343, art. VI, sec. 614, as amended by the Act of August 19, 1953, P. L. 1146, 72 PS §614:

"Whenever, by information or otherwise, the Department of Revenue shall become aware of the fact that any property, real or personal, has escheated, or is supposed to have escheated, to the Commonwealth, under any act of Assembly, it shall have the power in its discretion, to appoint, by commission, under the department's seal, some suitable person, *resident in the county* where the department shall have reason to suppose that the escheated property, or the greater part of it, is situate, to act as escheator of such property."

Plaintiff-escheators take the position that respondents in their preliminary objections, or petitions and motions to dismiss, are not entitled to go behind their appointment by the Department of Revenue, which they say is presumed to have performed its duty according to law and that for the courts to examine the question of "residence" of the escheators would be an

unjustified interference by the judiciary with another branch of the government. On the other hand, the position of respondents, in essence, is that a reasonable construction of section 3 of the Act of 1953, supra, in connection with section 614 of The Fiscal Code, requires that the residence county of the escheator be averred in the petition in escheat. We are of the opinion that the argument of respondents on this point is the more persuasive and that therefore the petition in escheat should be amended to set forth the residence county of each escheator.

(2) Respondent's second objection is to the effect that plaintiff-escheators' petition in escheat is vague, indefinite and lacking in particularity in that it does not set forth the *nature and character of the alleged escheat*, nor "as far as he conveniently can", the *location, character and amount of property* alleged to have escheated, the name and address of the person or persons having the same in his or their possession as required by section 7 (*a*) of the Act of May 2, 1889, P. L. 66, as last amended by section 3 of the Act of July 29, 1953, P. L. 986, 27 PS §42, and by section 1302 of The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §1302.

Respondents further say that the petition in escheat incorporates merely the bald assertion in paragraph 4 that "certain personal property" is subject to escheat and in paragraph 5 lists various types of personal property alleged to have escheated *without including* the location, character and *amount in each classification* alleged to have escheated.

In view of the declaration in the commission issued to the escheators that "Information has been given according to law, by Michael Edelman and A. Jere Creskoff . . ." concerning "unclaimed moneys in the Pennsylvania Railroad Company whereby the said

property and estate has escheated to the Commonwealth" and the uncontroverted facts alleged in the Pennsylvania Railroad Company's request for admissions under Pa. R. C. P. 4014:

"2. That Exhibits 2 and 3 hereto are true and correct copies of so much of the Information filed in this proceeding as applied to this respondent.

"3. That the said Informations are dated April 12, 1935 and September 23, 1935 respectively, and were filed with the Department of Revenue of the Commonwealth of Pennsylvania on about those dates," we are of the opinion that plaintiff-escheators should further amend their petition in escheat by pleading in more particularity the location, character and amounts of personal property in each classification which is alleged to have escheated and also the nature and character of the alleged escheat.

In view of the discovery procedure available and the fact that the informations have been on file since 1935 with respect to these matters, plaintiffs should be able to furnish the information required by the Act of 1953. Accordingly, we sustain the objections made to plaintiffs' petition in escheat with respect to failure to aver the county residence of plaintiffs and the nature and character of the alleged escheat and the location, character and amount of the property alleged to have escheated. We think, however, that instead of dismissing the petition as respondents request, plaintiff-escheators should be allowed to amend their petition as herein indicated.

We have carefully considered all of the remaining reasons advanced by the respective respondents in support of their preliminary objections and their petitions and motions to dismiss plaintiffs' petition in escheat. To comment upon each of these contentions would unduly enlarge this opinion without benefit to

any of the parties concerned. We have discussed, however, what we consider the controlling issues involved and have stated our reasons for the disposition we have made of them.

And now, October 28, 1958, the rules heretofore granted on the Pennsylvania Railroad Company's: (1) *Petition for rule to show cause why the petition in escheat filed in the above entitled proceeding should not be dismissed;* and (2) *petition for rule to show cause why the statement of voluntary substitution of Frank B. Murdoch and Robert C. Duffy as parties plaintiff should not be stricken off* are hereby discharged and plaintiffs are permitted to amend their petition in escheat within 20 days from this date.

Judge Herman did not participate in the consideration or decision of this case.